511 So.2d 1047 (1987)
John William JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1727.
District Court of Appeal of Florida, Second District.
August 7, 1987.
Rehearing Denied September 3, 1987.
James Marion Moorman, Public Defender, Bartow, and Deborah K. Brueckheimer, Asst. Public Defender, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Acting Chief Judge.
The state charged John William Jackson with first degree murder and armed burglary. Jackson was tried by jury and found guilty of both offenses. The trial court sentenced him to life imprisonment with a minimum mandatory term of twenty-five years. In this appeal we focus on the one meritorious point presented by Jackson that the trial court erred in denying his motion for judgment of acquittal.
At Jackson's trial, the state's evidence revealed that on December 19, 1983, around 4:30 a.m., Marie Felver Porter was raped and stabbed in her house trailer on Drawdy Road, Plant City. She went to a neighbor's door for help and told him that *1048 "an orange picker, Michigan tag" had done it. She died shortly thereafter from multiple stab wounds to her neck. An autopsy revealed a bruise on her right wrist which was later determined to be a bite mark. At approximately 7:30 a.m. on the day of the crime the police arrived at the scene, where they obtained blood, semen and saliva stains, fingerprints, and hair samples.
Jackson, a 31-year-old, Caucasian male, had lived in the vicinity of the victim's trailer from approximately July 1983 until a few days before the crime, when he moved a few miles away. He lived in the yards of various neighbors, either in a tent or in his car.
On January 13, 1984, Jackson was questioned by the police. He appeared voluntarily and denied knowing the victim or her husband. He told the police he had spent the night of the murder at a rest area on Interstate 4, some fifteen to twenty miles from Marie Porter's trailer. He said that on December 19, 1983, at around 5:15 a.m. he went to the Minute Man Labor Pool in Tampa, where he remembered seeing a Mr. Abe Abdu. The Minute Man Labor Pool records did not reveal that he had worked on that day. Mr. Abdu did not see Jackson at the labor pool in the early morning; he saw him only at the time he was leaving. With Jackson's consent he was fingerprinted. Also with his consent, the police took impressions of his teeth and collected samples of his pubic and head hair and his blood.
On January 31, 1984, Jackson had a conversation with Charles and Patricia Fuller, on whose property he had lived during the latter part of 1983. Jackson told them that when the police had interrogated him he learned that the victim had been raped, stabbed, and bitten. This was before the police had released the information that the victim had been bitten. Mrs. Fuller acknowledged that Jackson had told her that he had been picking oranges. She also stated that she had seen the defendant carrying a knife. Mr. Fuller testified that during the time he knew him, the defendant had worked as a heavy equipment operator out of a labor pool in Tampa.
The state presented a number of expert witnesses. Dr. Richard Souviron, a forensic odontologist, concluded that the bite mark on the victim's wrist was consistent with Jackson's teeth impressions. FBI Agent Michael Malone, an expert in hair and fibers analysis, identified two head hairs found on the victim's pajama top as being indistinguishable from Jackson's hair sample. These hairs on the victim's pajamas were identified as having been forcibly removed. Negroid hairs found in a window screen and a Negroid pubic hair found in the combed pubic hair of the victim, plus several other strands of Caucasian hair, were not identified.
At the conclusion of the state's case, Jackson moved for a judgment of acquittal under Florida Rule of Criminal Procedure 3.380. He argued that the state's case was based entirely on circumstantial evidence and did not exclude any reasonable hypothesis consistent with innocence. The trial court denied his motion. The defendant then introduced evidence on his own behalf, none of which tended to incriminate him. At the conclusion of all evidence, the defendant again moved for judgment of acquittal. Again, the trial court denied the motion.
When, as here, the state's evidence against the defendant is circumstantial, this court's role is to determine whether the jury might have reasonably concluded that the evidence excluded every reasonable hypothesis but that of guilt. Tsavaris v. State, 414 So.2d 1087 (Fla. 2d DCA 1982). The weight of the evidence is a matter for the trier of fact, and a jury verdict should not be reversed where there is substantial, competent evidence to support it. Heiney v. State, 447 So.2d 210 (Fla. 1984). Nevertheless, in criminal convictions based solely on circumstantial evidence, it is our duty to reverse the conviction when that evidence, although strongly suggesting guilt, fails to eliminate any reasonable hypothesis of innocence. Owen v. State, 432 So.2d 579 (Fla. 2d DCA 1983). Here, we conclude that the state did not present substantial, competent evidence to *1049 support the jury's verdict; hence, we must vacate the defendant's convictions.
There were three items of crucial evidence presented by the state: first, the consistent bite mark; second, Jackson's statement to the Fullers that the victim had been bitten; and third, the strands of hair found on the victim matching Jackson's hair. We now examine the probative effect of each of these items of evidence.
Dr. Souviron was qualified as an expert in forensic odontology and bite-mark analysis. He testified that the bite mark on the victim's wrist was made through clothing. In his own words, it was a tough bite: "It's tough because it's a bite through the cloth ... difficult bite to diagnose." Dr. Souviron matched the impressions of Jackson's teeth to pictures of the bite and found similarities such as a left tooth sticking out, space between front teeth, and unique characteristics of the curvature of the arch. However, Dr. Souviron stated that "this was not a positive bite ..." and said, "I certainly hope he [Detective Baker] didn't arrest John Jackson on this bite." Moreover, testimony for the defense of another forensic odontologist cast considerable doubt on the reliability of Dr. Souviron's conclusions.
In Bradford v. State, 460 So.2d 926 (Fla. 2d DCA 1984) (Campbell, J., dissenting), this court affirmed the defendant's conviction of murder where bite mark evidence was introduced by the state. In Bradford, Dr. Souviron, again the state's expert witness, testified that, to a reasonable degree of dental certainty or probability, the two abrasion patterns on the index finger of the appellant had been made by the victim's teeth. However, in Bradford, the state presented substantial evidence that the defendant had been in the victim's apartment at or about the time the crime had been committed. It also introduced other circumstantial evidence tending to show the defendant's guilt.
The fact that Jackson knew that the victim had been bitten is not probative of his guilt. Prior to defendant's conversation with the Fullers, the police had taken impressions of his teeth. This would certainly be a strong indication to anyone that a bite mark was involved.
The only other significant evidence presented against Jackson was Agent Malone's testimony that two strands of hair found on the victim's pajamas matched the defendant's hair samples. Agent Malone explained that he was trained to recognize the unique microscopic characteristics of hair. He testified that he has to come up with at least fifteen matching characteristics before he can say that two hair samples are consistent with having originated from the same person. Malone identified twenty characteristics present in Jackson's hair samples and in the hair found on the victim's pajamas. He concluded that the hairs were indistinguishable. Despite his conclusion, Agent Malone testified that "hair will never get unique enough to be like a fingerprint." He also agreed that hair comparisons do not constitute a basis for positive personal identification and stated that "it's not a fingerprint, no. I cannot say that that hair came from John Jackson and nobody else."
Given the quality of the state's evidence, it is clear that Jackson's conviction hinges on two hairs found on the victim's clothing which match his hair sample. Hair comparison testimony, while admissible, does not result in identifications of absolute certainty. Bundy v. State, 455 So.2d 330 (Fla. 1984). There was no evidence placing the defendant at the scene of the crime, no indication of a relationship of any kind between the defendant and the victim, or that they even knew each other. The victim's dying words pointed to an "orange picker, Michigan tag." Jackson's car, however, had a Florida tag. None of the fingerprints found at the scene of the crime matched Jackson's. This, plus the presence of Negroid pubic hair in the victim's pubic hair combings, adds support to a reasonable hypothesis that someone else committed the crime.
Even if the hair evidence were as positive as a fingerprint, the state would have to show that the hair could only have been placed on the victim's pajamas during the commission of the crime. See Jaramillo *1050 v. State, 417 So.2d 257 (Fla. 1982). This the state failed to show. Furthermore, although a defendant's motive is not an element of a crime, where, as here, the evidence is entirely circumstantial, the lack of any motive on the part of the defendant becomes a significant consideration. Daniels v. State, 108 So.2d 755 (Fla. 1959).
The Supreme Court of Florida has repeatedly said that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." Jaramillo at 257; McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977).
Viewing all the evidence presented in a light most favorable to the state, as we must do on appellate review, we find that the state failed to present substantial, competent evidence sufficient to enable the jury to exclude every reasonable hypothesis of defendant's innocence.
Accordingly, we reverse the trial court's denial of the defendant's motion for a judgment of acquittal and vacate the defendant's convictions and sentence.
CAMPBELL and SCHOONOVER, JJ., concur.