527 So.2d 179 (1988)
Willie MITCHELL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 70074.
Supreme Court of Florida.
May 19, 1988.
Rehearing Denied July 20, 1988.
James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Lauren Hafner Sewell, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Willie Mitchell, Jr., appeals his conviction for first-degree felony murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
In the early morning of May 1, 1986, the body of Walter Shonyo was found in a residential parking area in Tampa. He had *180 been stabbed approximately 110 times and had a human bite mark on his left arm. He had no wristwatch or wallet, his pants pockets had been emptied and turned inside out, and his pants were undone and pulled down from his waist. Shonyo's truck was found about 1000-1200 feet from his body. There was blood on the floorboard of the truck, especially on the passenger side. All of the blood in the interior of the truck was consistent with Shonyo's blood, but the police later identified palmprints found inside the truck as belonging to Willie Mitchell.
Witnesses testified that at approximately 1:00-2:00 a.m. on May 1, Willie Mitchell arrived to spend the night at his cousin's house. Further testimony revealed that Mitchell had a small cut on his lip and his shirt was all wet with blood. He brought with him a cardboard box full of miscellaneous tools. The next day, Mitchell tried to sell the tools at a gas station but could not get a satisfactory price for them. Later, the police found Shonyo's leather glove, watch and blue windbreaker at Mitchell's cousin's house. One of the witnesses testified that he had seen a small pocketknife in the house with dried blood on it close to where Mitchell slept that night following the murder. Annie Harden, Mitchell's cousin, testified that the appellant told her he had been in a fight with two men at a bar over a woman. Annie stated that Mitchell looked like he had gotten the worst of it, but Mitchell insisted that he had been the winner and stated "[i]f he [one of the men] ain't dead, he wished he was dead." Neither the knife nor the bloody shirt Mitchell wore on May 1 was ever found.
The defense theory was that Shonyo's death was caused by a homosexual rage killing. Mitchell testified that after he left the bar on the night of the murder he spotted Shonyo's truck and decided to burglarize it. After removing some items from the inside of the truck, Mitchell stepped on something with his foot, which turned out to be Shonyo's watch. He picked up the watch and put it in his pocket.
The jury found Mitchell guilty of first-degree felony murder and armed robbery with a deadly weapon and recommended the death penalty by a seven to five vote. The trial court found no mitigating circumstances and four aggravating circumstances. Finding the aggravating circumstances outweighed the mitigating circumstances, the trial court sentenced Willie Mitchell to death for the murder of Walter Shonyo and to 99 years for the armed robbery.
Mitchell raises nine points on this appeal. He first contends that the trial court erred in excusing four prospective jurors for cause because each of them was not sufficiently questioned concerning whether his feelings on the death penalty "would prevent or substantially impair the performance of his duties as a juror" as required by Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), quoting Adams v. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Admittedly, the prosecutor's questioning of the prospective jurors was brief. However, a review of the voir dire record supports the conclusion that the jurors' views toward the death penalty would have substantially impaired, if not totally prevented, the proper performance of their duties as jurors. We previously held in Lara v. State, 464 So.2d 1173, 1178-79 (Fla. 1985), quoting Herring v. State, 446 So.2d 1049, 1055-56 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), that:
It would make a mockery of the jury selection process to ... allow persons with fixed opinions to sit on juries. To permit a person to sit as a juror after he has honestly advised the court that he does not believe he can set aside his opinion is unfair to the other jurors who are willing to maintain open minds and make their decision based solely upon the testimony, the evidence, and the law presented to them.
Defense counsel must have believed that the jurors had adequately expressed their views because he made no request to further interrogate them. The trial court did not abuse its discretion in granting the *181 state's motion to excuse these jurors for cause.
Mitchell next contends that, during voir dire, the prosecutor diminished the jury's role in capital sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The prosecutor stated "that the ultimate decision as to whether or not the man lives or dies is made by Judge Coe." We find that this issue is not properly before us because defense counsel failed to object to the prosecutor's comments. Copeland v. Wainwright, 505 So.2d 425 (Fla.), vacated on other grounds, ___ U.S. ___, 108 S.Ct. 55, 98 L.Ed.2d 19 (1987). Even if this issue were properly before us, however, in the context of the entire statement made by the prosecutor, it is clear that the jury was not misled about its role in the capital sentencing process. Combs v. State, 525 So.2d 853 (Fla. 1988).
Mitchell next argues that the bite mark testimony of the state's expert was so unreliable that its admission constituted fundamental error. Dr. Briggle, a dentist and forensic odontologist consultant to the Dade County Medical Examiner, testified without objection that Mitchell's teeth matched the pattern of the bite mark even though the bite had been made through clothing. Dr. Levine, Chief of Forensic Dentistry with the Nassau County, New York, Medical Examiner's Office, testified for the defense that he could not make any identification because the bite mark did not contain enough unique characteristics. This Court has previously approved the admissibility of expert bite mark testimony. Bundy v. State, 455 So.2d 330 (Fla. 1984). Once admitted, its probative value is weighed by the trier of fact. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982).
Mitchell's reliance on Jackson v. State, 511 So.2d 1047 (Fla. 2d DCA 1987), is misplaced. In Jackson, the Second District Court of Appeal held that the defendant's motion for acquittal should have been granted because all of the evidence, including the testimony concerning the bite mark, was insufficient to establish his guilt. The state's expert testified only that the bite mark was consistent with the defendant's teeth impression. He also observed that "this was not a positive bite" and that he hoped that the police did not arrest the defendant "on this bite." Id. at 1049. The court simply held that the state's evidence, all of which was circumstantial, failed to exclude every reasonable hypothesis of guilt.
Here, the evidence was far more compelling. First, there are the statements Mitchell made to his cousin that if the person he was in a fight with "wasn't dead, he wished he was dead." Second, when Mitchell came home in the early morning of May 1, he was covered with blood, and testimony indicated that the amount of blood present on Mitchell was much more than would have been caused by the small abrasion on his lip. Third, Mitchell was found in possession of numerous items belonging to Walter Shonyo, including his wristwatch which, presumably, was removed from the body. Fourth, a witness testified that he saw a small pocketknife with dried blood near where Mitchell slept after the murder. There was competent substantial evidence to support the verdict of guilt.
Mitchell argues in issue four that the prosecutor made allegedly improper and inflammatory comments during his closing rebuttal argument to the jury. Defense counsel failed to object to these comments, and they were clearly not of such a nature as to have constituted fundamental error.
Mitchell next argues that he should be granted a new trial because one of the jurors stated, in an affidavit a week after the trial, that she was pressured into returning a verdict of guilty by one of the jurors and that other jurors had placed the burden on Mitchell to prove his innocence. It is a well settled rule that a verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations. Russ v. State, 95 So.2d 594 (Fla. 1957); Langford v. King Lumber & Mfg. Co., 123 Fla. 855, 167 So. 817 (1935); Linsley v. State, 88 Fla. 135, 101 So. 273 (1924). This principle has also *182 been applied in capital cases. Songer v. State, 463 So.2d 229 (Fla.), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). Consequently, we cannot consider the juror's comments as requiring a new trial because all of the activities mentioned involve the jury's deliberations and inhere in the verdict.
Mitchell's next three arguments all concern the propriety of finding the existence of three[*] aggravating factors during the penalty phase of his trial: the murder was committed during a robbery; the homicide was especially heinous, atrocious and cruel; and the murder was cold, calculated and premeditated. We affirm the finding that the murder was committed during the course of a robbery and that it was especially heinous and cruel, but reverse the finding that the killing was cold, calculated and premeditated. We recently defined the cold, calculated and premeditated factor as requiring a careful plan or prearranged design. Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The medical examiner testified that the number of stab wounds and the force with which they were delivered were consistent with a killing consummated by one in a rage. A rage is inconsistent with the premeditated intent to kill someone, and there was no other evidence of premeditation. Accordingly, we reverse the trial court on the finding that the murder was cold, calculated and premeditated. However, there are still three valid aggravating factors which would support imposition of the death penalty and no mitigating factors. The elimination of the fourth aggravating factor would not have affected Mitchell's sentence. Rogers.
Mitchell's final point is that the quality of evidence against him was insufficient to support imposition of the death penalty. We disagree. The theory of lingering doubt does not prevail in Florida. King v. State, 514 So.2d 354 (Fla. 1987). There was sufficient evidence to support the imposition of the death penalty. We hereby affirm both convictions and the sentences for each.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] Mitchell concedes that a fourth aggravating factor (previously convicted of a felony involving violence) predicated upon a prior robbery was properly found.