530 So.2d 368 (1988)
Rodney Charles HORSTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2925.
District Court of Appeal of Florida, Second District.
August 5, 1988.
Rehearing Denied September 12, 1988.
James Marion Moorman, Public Defender, and John T. Kilcrease Jr., Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
The state charged Rodney Horstman with first degree murder. A jury found him guilty of second degree murder, and the trial court sentenced him to seventeen years imprisonment. Horstman challenges the trial court's denial of his motion for judgment of acquittal, contending that the evidence presented against him was legally insufficient. We agree that the state did not present substantial, competent evidence to support the jury's verdict, and accordingly, we must vacate Horstman's conviction.
At Horstman's trial, the state's evidence revealed that sometime during the early morning hours of Sunday, May 19, 1985, Sandra Peterson was strangled. At 10:55 a.m., a neighborhood boy found Peterson's nude body lying next to a dumpster in an area near a bar within walking distance of the house that she shared with her boyfriend, Earl Jones. A police investigation disclosed that on Friday night, Peterson *369 and Jones had an argument which apparently prompted them to avoid each other for the rest of Friday evening, Saturday, and Saturday night. There was testimony that Jones, allegedly an alcoholic, had passed out in the entrance of one of the bars Peterson visited that night. A friend of Jones corroborated Jones's testimony that he received help getting home and slept in a neighbor's parked car.
Peterson patronized several neighborhood bars on Saturday night, May 18. The bartender at the Naughty Pine saw her come in alone about 10:00 p.m. and engage in conversation with Horstman. The bartender observed Peterson shake her head "no" in response to Horstman and leave the bar.
The bartender at Sam's Tavern testified that Peterson and Horstman came in together between 10:30 and 11:00 p.m. After Horstman bought each of them a beer, they had an argument in which Horstman placed a rose in front of Peterson and she returned it to him. Horstman grabbed her arm, and Peterson pulled away and moved several stools down the bar. Horstman stayed where he was and ordered more beer. The bartender believed Horstman was intoxicated and refused to serve him. Peterson left the bar, and Horstman left soon afterward.
George Schearer, his wife, Adele, and Debbie Florence testified that they observed Peterson come into the Wreck Bar about 10:30 Saturday night followed by Horstman, who sat next to her. They talked to each other and to the Schearers. Horstman purchased flowers for Peterson and the female bartender, and they thanked him. Around 12:30 a.m., while Horstman was in the bathroom, Peterson left. When Horstman found Peterson gone, he slammed down his beer mug and departed. Horstman told police that he did not see Peterson again that evening and that he went straight home to the trailer where he lived alone.
An autopsy failed to specify the time of death or whether the body had been moved postmortem. Peterson's head, face, arm, and knee were bruised. There was, however, no trace of sperm or signs of forced sexual intercourse. Death was caused by strangulation. Her blood alcohol level was .110. Tests of the blood found on Peterson and her clothes were inconclusive to link Horstman to the murder because he and Peterson had the same blood type. FBI Agent Michael Malone, an expert in hair and fiber analysis, testified that there were strands of head hair in Peterson's mouth, on her jeans, her shirt, her knee, and in her blouse, brassiere, and panties that were indistinguishable from Horstman's hair. The hair had been forcibly removed. A pubic hair indistinguishable from Horstman's hair was found on Peterson's ankle sock. Other hair, inconsistent with that of Peterson, Horstman, or Jones was also found on the sheet from the morgue.
Further, it was discovered that Peterson's pubic hair was singed. There was testimony that Peterson had a cigarette lighter with her that night. A cigarette lighter, on which there was a fingerprint, was found in the dumpster near her dead body. The fingerprint, however, did not match those of anyone in the case.
Horstman argues that the only evidence against him is that he was seen on the night of the murder at three separate bars making apparently unsuccessful sexual advances towards Peterson, and the head and pubic hairs found on her corpse were indistinguishable from his hair and indicated close or intimate contact. Horstman contends that this evidence is insufficient to establish that he murdered Peterson.
We think Horstman's argument is valid. The weight of the evidence is a matter for the trier of fact. However, in cases where, as here, the defendant challenges his conviction which rests solely on circumstantial evidence, it is the appellate court's duty to review the legal sufficiency of the evidence. The appellate court must reverse the conviction when the evidence, even if strongly suggestive of guilt, fails to eliminate any reasonable hypothesis of innocence. Jaramillo v. State, 417 So.2d 257 (Fla. 1982). As we observed in Owen v. State, 432 So.2d 579 (Fla. 2d DCA 1983):

*370 [W]hen the state relies on circumstantial evidence, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged.
432 So.2d at 581.
In a somewhat similar case, Jackson v. State, 511 So.2d 1047 (Fla. 2d DCA 1987), this court discussed the problem of basing a conviction on hair comparison evidence. While admissible, hair comparison testimony does not establish certain identification as do fingerprints. See Bundy v. State, 455 So.2d 330 (Fla. 1984). In Jackson, this court reversed a defendant's conviction where there was no evidence placing him at the scene of the crime and no indication of a relationship of any kind between him and the victim. Obviously the case at bar differs in that there was testimony that places Horstman in the vicinity of the crime and with the victim a good part of the night. Nevertheless, we feel that without more, the evidence against Horstman is legally insufficient to sustain the jury's verdict.
As noted, the evidence against Horstman was circumstantial. The blood analysis was inconclusive due to the similarity in Horstman's and Peterson's blood types. The fact that a fingerprint not matching Horstman's was found on a cigarette lighter near the victim and the victim's pubic hair had been singed suggests someone else may have committed the crime.
The strongest evidence implicating Horstman in Peterson's murder is the hair that was found on her body. Although hair comparison analysis may be persuasive, it is not 100% reliable. Unlike fingerprints, certainty is not possible. Hair comparison analysis, for example, cannot determine the age or sex of the person from whom the hair came. The state emphasizes that its expert, Agent Malone, testified that the chances were almost nonexistent that the hairs found on the body originated from anyone other than Horstman. We do not share Mr. Malone's conviction in the infallibility of hair comparison evidence. Thus, we cannot uphold a conviction dependent on such evidence.
Moreover, as we explained in Jackson, even if the hair evidence were as positive as a fingerprint, the state failed to show that the hair could only have been placed on the victim during the commission of the crime.
Viewing all the evidence presented in a light most favorable to the state, as we must do on appellate review, we find that the state failed to present substantial, competent evidence sufficient to enable the jury to exclude every reasonable hypothesis of Horstman's innocence.
Accordingly, we reverse the trial court's denial of his motion for judgment of acquittal and vacate his conviction and sentence.
CAMPBELL, C.J., and SCHEB and LEHAN, JJ., concur.