674 So.2d 96 (1996)
Mark Allen GERALDS, Appellant,
v.
STATE of Florida, Appellee.
No. 81738.
Supreme Court of Florida.
February 22, 1996.
Rehearing Denied May 20, 1996.
Nancy A. Daniels, Public Defender and W.C. McLain, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Gypsy Bailey, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Mark Allen Geralds appeals the imposition of the death penalty on resentencing. We have jurisdiction based on article V, section 3(b)(1), of the Florida Constitution. For the reasons expressed below, we affirm the reimposition of the death penalty.
Geralds was convicted and sentenced to death in February 1990 for the first-degree murder of Tressa Lynn Pettibone. On appeal, this Court affirmed Geralds' conviction but, due to trial court errors, remanded for resentencing and a new penalty phase hearing. See Geralds v. State, 601 So.2d 1157 (Fla.1992).[1]
After the new penalty phase hearing, the jury recommended death by a twelve-to-zero vote. At sentencing, the trial court found the following aggravating factors: (1) the murder was committed during the commission of a robbery and/or burglary;[2] (2) the murder was especially heinous, atrocious, or cruel;[3] and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[4] The court found the statutory mitigator of age[5] but afforded it little weight. The defendant was twenty-two years old at the time of the offense. As for non-statutory mitigation, the trial court found the following but gave them "very little weight": (1) defendant's love and concern for his daughter and former wife; (2) defendant came from a divorced family and was unloved by his mother; and (3) defendant's antisocial behavior and bipolar manic personality. The trial court determined the aggravating factors outweighed the mitigating factors and sentenced Geralds to death.
On appeal, Geralds raises ten claims.[6] At the outset, we note that claims six and *99 seven are procedurally barred because defense counsel failed to object with the requisite specificity in the trial court. See Jackson v. State, 648 So.2d 85, 90 (Fla.1994); Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982).
As his first issue on appeal, Geralds argues that the trial court abused its discretion in denying his motion for continuance to secure Dr. William Sybers as a witness at the conclusion of the defense's case. We cannot agree. "While death penalty cases command [the Court's] closest scrutiny, it is still the obligation of an appellate court to review with caution the exercise of experienced discretion by a trial judge in matters such as a motion for a continuance." Cooper v. State, 336 So.2d 1133, 1138 (Fla.1976); see also Rose v. State, 461 So.2d 84, 87 (Fla.1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). The denial of a motion for continuance should not be reversed unless there has been a palpable abuse of discretion; this abuse must clearly and affirmatively appear in the record. Magill v. State, 386 So.2d 1188 (Fla.1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).
To prevail on his motion for continuance, the defendant was required to show: (1) prior due diligence to obtain the witness's presence; (2) that substantially favorable testimony would have been forthcoming; (3) that the witness was available and willing to testify; and (4) that the denial of the continuance caused material prejudice. United States v. O'Neill, 767 F.2d 780, 784 (11th Cir.1985); see also Robinson v. State, 561 So.2d 419, 421 (Fla. 1st DCA 1990); Goree v. State, 411 So.2d 1352, 1353 (Fla. 3d DCA 1982). Geralds has failed to demonstrate compliance with any of these requirements.[7] Accordingly, we find that the trial court did not abuse its discretion in denying the appellant's motion for continuance.
Geralds' second claim is that the prosecutor's cross-examination of him during the penalty phase proceeding was beyond the scope of his testimony on direct examination about evidence linking him to the murder. Section 90.612(2), Florida Statutes (1993), states that "[c]ross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness." We have defined the permissible bounds of cross-examination as follows:
When the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief....
Coco v. State, 62 So.2d 892, 895 (Fla.1953) (quoting 58 Am.Jur. Witnesses, § 632, at 352 (1948)); see also Coxwell v. State, 361 So.2d 148, 151 (Fla.1978). In addition to the facts *100 and circumstances connected to the matters testified to during direct examination, section 90.612(2) provides that all witnesses may be cross-examined concerning their credibility. Moreover, the trial judge has wide discretion to impose reasonable limits on cross-examination. Jones v. State, 580 So.2d 143, 145 (Fla.), cert. denied, 502 U.S. 878, 112 S.Ct. 221, 116 L.Ed.2d 179 (1991).
During his testimony on direct examination, Geralds covered six general subjects ranging from his personal history to learning from his wife that, after his arrest, she had been threatened by two individuals. Geralds also denied killing Tressa Pettibone and stated that he worked in the Pettibone home for two or three months. We find that by denying on direct examination that he murdered Tressa Pettibone, Geralds opened the door to be examined or impeached with evidence that linked him to the murder. Accordingly, we find no abuse of discretion by the trial court in permitting the state's cross-examination.
Geralds next argues the trial court abused its discretion by allowing Dr. James Lauridson, a pathologist who had not performed the victim's autopsy, to offer expert testimony as to the manner and cause of death of the victim.[8] The determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error. Ramirez v. State, 542 So.2d 352, 355 (Fla. 1989). An expert is permitted to express an opinion on matters in which the witness has expertise when the opinion is in response to facts disclosed to the expert at or before the trial. § 90.704, Fla.Stat. (1993); see Capehart v. State, 583 So.2d 1009 (Fla.1991) (holding chief medical examiner, who based her opinion on autopsy report, toxicology report, evidence receipts, photographs of body, and all other paperwork filed in case, could testify regarding cause of death and condition of victim's body, although she did not perform autopsy), cert. denied, 502 U.S. 1065, 112 S.Ct. 955, 117 L.Ed.2d 122 (1992).
The trial judge's ruling in this case does not represent a "clear showing of error." Although there may be a difference of opinion regarding the weight to be given to Dr. Lauridson's testimony concerning the manner and cause of the victim's death, its admissibility was within the properly exercised discretion of the trial judge. See Dragon v. Grant, 429 So.2d 1329, 1330 (Fla. 5th DCA 1983).
Moreover, there was no potential taint from Dr. Lauridson basing his opinion on the materials Dr. Sybers prepared and compiled because Dr. Lauridson based his independent conclusions largely on the objective evidence. Dr. Lauridson arrived at his conclusions by reviewing: (1) two to three hundred Kodachrome slides taken at the murder scene and during the autopsy; (2) written records prepared by Dr. Sybers; and (3) Dr. Sybers' previous testimony he offered in this case. Given the wealth of objective evidence (i.e., the slides) upon which Dr. Lauridson based his opinions, the trial court did not abuse its discretion in permitting Dr. Lauridson to testify.
As his fourth claim, Geralds argues that the trial court erred in refusing to instruct the jury that prior convictions for non-violent felonies are not aggravating circumstances. In Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981), we held that after a defendant expressly waives any reliance on the mitigating factor of "no significant prior criminal activity," the state is not allowed to present extensive evidence of defendant's prior criminal record of non-violent offenses to rebut the mitigating factor upon which the defendant expressly stated he would not rely.[9]Id. at 977; see also Geralds, 601 So.2d *101 at 1162 (stating that "a defendant's convictions for non-violent felonies are inadmissible evidence of nonstatutory aggravating circumstances").
In this case, the defendant did waive reliance on the mitigating factor of no significant prior criminal activity. However, it was the defendant, not the state, who presented evidence of the defendant's prior non-violent felony convictions.[10] Therefore, our decision in Maggard is inapplicable. Pangburn v. State, 661 So.2d 1182 (Fla.1995). Consequently, the defendant was not entitled to an instruction that directed the jury not to consider his prior non-violent felony convictions as an aggravating circumstance. See Fla. Std.Jury Instr. (Crim.) 78 (providing that only if the defendant offers evidence of no significant history of prior criminal activity and the state, in rebuttal, offers evidence of other crimes, is jury entitled to instruction that conviction of a previous crime is not an aggravating circumstance). In addition, the record reflects no effort by the state to rely on appellant's record as an aggravating circumstance. The appellant has failed to demonstrate reversible error.
Geralds next contends that the trial court should have instructed the jury on the statutory mitigator of extreme mental or emotional disturbance.[11] We disagree. Only where a defendant has presented evidence regarding a statutory mitigator, such as extreme mental or emotional disturbance, should the trial judge read the applicable instructions to the jury. Bryant v. State, 601 So.2d 529, 533 (Fla.1992). In this case, appellant presented no evidence that the "capital felony was committed while [he] was under the influence of extreme mental or emotional disturbance." § 921.141(6)(b), Fla.Stat. (1993). James Beller, a psychotherapist who performed numerous psychological tests on appellant, testified that he diagnosed Geralds as suffering from anti-social personality disorder and bipolar manic disorder. Mr. Beller explained that, in this case, bipolar manic disorder means one episode of major depression followed by an episode or several episodes of manic behavior. He also concluded that Geralds has an explosive temper and an aggressive acting out profile. On cross-examination, Mr. Beller indicated that Geralds has "been depressed at one time or another, starting at least [at] the age of nine." However, Mr. Beller did not comment on Geralds' actual or probable mental condition at the time of the murder as contemplated by the statute. Therefore, we find no error in the trial court's failure to give the jury an instruction on the statutory mitigator of extreme mental or emotional disturbance.[12]
Geralds' next two claims challenge the trial court's finding of the heinous, atrocious, or cruel and the cold, calculated, and premeditated aggravating circumstances. We affirm the trial court's finding of the former and reverse its finding of the latter.
In State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we defined the meaning of heinous, atrocious, or cruel:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and *102 vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital feloniesthe conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Id. at 9; see also Cheshire v. State, 568 So.2d 908, 912 (Fla.1990) ("The factor of heinous, atrocious or cruel is proper only in torturous murdersthose that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.").
At the initial sentencing, the trial court did not make a finding with regard to the heinous, atrocious, or cruel aggravator. On resentencing, however, the trial court found that the crime was especially heinous, atrocious, or cruel. In its sentencing order, the trial court painstakingly examined all of the evidence and testimony in light of this aggravator:
The circumstances of this killing indicate a consciousless [sic] and pitiless regard for the victim's life and was unnecessarily torturous to the victim. The murder was accomplished while the defendant was committing a robbery and a burglary of the victim's home. Due to the swollen condition of her hands the evidence establishes that the victim was bound with plastic ties around her wrists for at least twenty minutes prior to her death. In order for these plastic ties to be placed around her wrist there would have to have been no struggling from the victim because of the nature of the ties themselves and the small holes in which the ends of the ties have to be placed through in order to tighten them. The victim was severely beaten prior to death as evidenced by the bruises and cuts on various parts of her face and chest area. There is evidence of 10 to 15 blunt force injuries to these areas of her body. These bruises indicated the blows were sufficient to knock her down and/or render her unconscious. Several blows to her face were consistent with a human fist as well as a foot. One of the blows to her chest appeared to be the result of a stomp by a foot with sufficient force to cause hemorrhage to the victim's right diaphragm. The victim struggled with the defendant prior to her death in at least three separate areas of the kitchen and dining area as evidenced by the blood patterns found at the crime scene. However this was not a large area of space where this struggle took place. The first area of attack indicates the victim was standing when struck. The second area indicated the victim was most likely kneeling. The third area indicates the victim laid [sic] in her own blood for at least several minutes before being dragged to the area where the victim's body was found. A towel was wrapped around her mouth and positioned and tied in such a manner to be used to choke the victim and control her movements. The towel was also used to drag the victim's body to another position. The victim was stabbed three separate times in the neck. The last stab wound was the fatal wound and was inflicted at least twenty minutes after the victim was bound with ties, with such force as to go to the hilt of the knife severing the victim's windpipe and the large carotid artery. This was not an instantaneous or painless type of death.
In addition to the severe beating and binding of the victim, the evidence establishes that after the fatal wound [w]as inflicted, the victim lived long enough to take several breaths and, due to her windpipe being severed, she could not speak or shout for mercy or assistance while she drowned on her own blood being sucked into her lungs.
Besides the medical evidence and testimony in this case, several cases which are factually analogous support the trial court's finding of the heinous, atrocious, or cruel aggravating circumstance. In Perry v. State, 522 So.2d 817 (Fla.1988), the victim was "brutally beaten in the head and face" and "choked and repeatedly stabbed in the chest and breasts as she attempted to ward off the knife" while she was in her own home. Id. at 821. The victim "died of strangulation associated *103 with stab wounds, comparable, in the medical examiner's testimony, to drowning in her own blood." Id.; see also Pittman v. State, 646 So.2d 167, 172-73 (Fla. 1994) (finding heinous, atrocious, or cruel aggravating factor was warranted where each victim was stabbed numerous times and bled to death and one victim's throat was cut), cert. denied, ___ U.S. ___, 115 S.Ct. 1982, 131 L.Ed.2d 870 (1995); Whitton v. State, 649 So.2d 861, 866-67 (Fla.1994) (finding heinous, atrocious, or cruel aggravating factor was properly applied where medical examiner testified that attack lasted approximately thirty minutes, where blood trail showed that blows to head must have come late in attack, and where it was shown that, despite victim's intoxication, he was aware of what was happening to him), cert. denied, ___ U.S. ___, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); Hardwick v. State, 521 So.2d 1071 (Fla.) (finding evidence supported heinous, atrocious, or cruel aggravator when victim became unconscious within five to six minutes of being stabbed three times in chest and back, then shot in back and then struck about head), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988); Preston v. State, 444 So.2d 939, 945-46 (Fla.1984) (holding murder was especially heinous, atrocious, or cruel where, after robbing store, defendant forced victim to accompany him on mile and a half journey, then forced her to walk at knifepoint for 500 feet, though victim may not have been aware of wounds inflicted after defendant's initial slashing of her throat which severed jugular vein, trachea, and other main arteries of neck).
In Taylor v. State, 630 So.2d 1038 (Fla.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 107, 130 L.Ed.2d 54 (1994), we found that the heinous, atrocious, or cruel aggravator was supported by the evidence despite the fact that appellant contended there was no evidence the victim was conscious or that she endured great pain or mental anguish during the murder. Id. at 1042-43. Rather, the record in Taylor reflected the victim was stabbed at least twenty times with two different weapons. The victim also suffered twenty-one other lacerations, bruises, and wounds, and received several blows to her head and face from blunt objects. A medical examiner also testified that the victim in Taylor was alive while she was stabbed, beaten, and finally strangled. Id. at 1043; see also Allen v. State, 662 So.2d 323, 331 (Fla.1995) (as in Taylor, the medical examiner in Allen testified that the victim was alive when she was beaten repeatedly). We find no error in the trial court's finding that the heinous, atrocious, or cruel aggravating factor should be applied.[13]
Next, Geralds argues that the trial court erred in finding the cold, calculated, and premeditated aggravator contrary to this Court's express finding in its prior opinion. He contends that upon resentencing, the state did not offer any additional evidence to prove the existence of the cold, calculated, and premeditated factor than offered in the first trial. We agree and conclude there was insufficient new evidence presented in the resentencing hearing to validate the trial court's finding.
In Santos v. State, 629 So.2d 838 (Fla. 1994), we held that, upon resentencing, a trial court cannot find the cold, calculated, and premeditated aggravator when, on direct appeal, we have already ruled that the factor of cold, calculated, and premeditated was not supported by the record. Id. at 840. Our holding was based, in part, on the fact that no new facts were introduced on resentencing to alter our original conclusion. Id. In this case, upon resentencing the trial court found the cold, calculated, and premeditated aggravator when, on direct appeal, this Court agreed that the state "failed to meet its *104 burden of establishing beyond a reasonable doubt that this homicide was committed in a cold, calculated, and premeditated manner." Geralds, 601 So.2d at 1164 (emphasis added).
The only new evidence presented during resentencing was testimony about the manner in which the victim prepared herself before she would leave the house. This evidence does not materially impact on our previous analysis and conclusion that the evidence was insufficient to sustain this statutory mitigator.[14] Therefore, we find error in the trial court's finding that the cold, calculated, and premeditated aggravator was proven beyond a reasonable doubt.
Having determined one aggravating circumstance was erroneously found by the trial court, we must determine whether this error was harmless. The record before us reflects two valid aggravators: (1) the murder was especially heinous, atrocious, or cruel; and (2) the murder was committed during the course of a robbery and/or burglary. As for statutory mitigators, the trial court gave "little weight" to Geralds' age of twenty-two years at the time of the murder. As for non-statutory mitigators, the trial court found three but also accorded each of them "very little weight": (1) love and concern for his family; (2) unloving mother and divorced family; and (3) antisocial behavior and bipolar manic personality. This leaves two substantial aggravators, including the heinous, atrocious, and cruel aggravator, and mitigation that the trial judge gave "little weight." Further, having carefully scrutinized the record in this case, including the jury's unanimous recommendation of death, we are persuaded beyond a reasonable doubt that even without the aggravating circumstance of cold, calculated, and premeditated murder, the trial court still would have found that the aggravating factors present here substantially outweighed the mitigating evidence.[15]
Moreover, even without the cold, calculated, and premeditated aggravator, we conclude there was no reasonable likelihood of a life sentence being imposed under the particular *105 circumstances of this case. Rogers v. State, 511 So.2d 526, 535 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Thus, we conclude that the error, beyond a reasonable doubt, did not contribute to the trial court's imposition of the death penalty.[16]State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). We therefore affirm the sentence of death.
We likewise find when we consider the circumstances revealed in this record in relation to other similar decisions that death is not a disproportionate penalty in this case. See, e.g., Washington v. State, 653 So.2d 362 (Fla.1994), cert. denied, ___ U.S. ___, 116 S.Ct. 387, 133 L.Ed.2d 309 (1995); Taylor v. State, 630 So.2d 1038 (Fla.1993). The lack of substantial mitigation in this case compared to the substantial aggravation precludes us from finding that Geralds' sentence of death was disproportionate.[17] For the above reasons, we affirm the trial court's reimposition of the death penalty.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN and HARDING, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurs in part and dissents in part with an opinion.
SHAW, Justice, concurring in part, dissenting in part.
I disagree with the majority's disposition of Geralds' fourth claim. At the conclusion of Geralds' testimony on direct examination, defense counsel, in anticipation of impeachment by the State, asked Geralds how many prior criminal convictions he had. Geralds replied thirteen. Neither defense counsel nor the State pursued the matter further.
Unlike the majority, I believe the court erred in failing to give the requested instruction that these prior convictions, which were for noncapital, nonviolent offenses, could not be used as an aggravating circumstance. See generally § 921.141(5)(b), Fla.Stat. (1993) (A defendant's prior record can be used as an aggravating circumstance only where, "[t]he defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person.").
Florida's standard jury instructions address a related topic, stating that where the defendant argues "no significant history of prior criminal activity" as a mitigating circumstance and the State counters with proof of prior convictions the defendant is entitled to the following cautionary instruction:
Conviction of (previous crime) is not an aggravating circumstance to be considered *106 in determining the penalty to be imposed on the defendant, but a conviction of that crime may be considered by the jury in determining whether the defendant has a significant history of prior criminal activity.
Fla.Std.Jury Instr. (Crim.) 78.
I can think of no logical reason why a defendant would not be entitled to a like instruction in a case such as the present where the defense rather than the State presents evidence of prior convictions. To tell the jury that it cannot consider certain prior convictions as an aggravating circumstance when the evidence is presented by the State, but to refuse to give such an instruction when identical evidence is presented by the defense seems illogical. The prior convictions either are or are not cognizable in aggravation, and the jury upon request should be properly instructed on the law. Refusing to give the instruction in the present case was in my opinion error.
I would find the present error harmless, however, because the State did not emphasize the prior convictions to the jury or argue them as an aggravating circumstance. Additionally, there are two strong aggravating circumstances and no weighty mitigating circumstances, and the jury voted unanimously for death.
I concur fully in the remainder of the majority opinion.
ANSTEAD, J., concurs.
WELLS, Justice, concurring in part and dissenting in part.
I concur with the majority's decision to affirm the trial court's reimposition of the death penalty. However, for reasons similar to those which I stated in my dissent in Barwick v. State, 660 So.2d 685 (Fla.1995), I do not agree with the majority's decision to strike the cold, calculated, and premeditated aggravating factor.
NOTES
[1] The facts surrounding the murder are detailed in our original opinion. See Geralds, 601 So.2d at 1158-59.
[2] § 921.141(5)(d), Fla.Stat. (1993).
[3] Id. § 921.141(5)(h).
[4] Id. § 921.141(5)(i).
[5] Id. § 921.141(6)(g).
[6] The ten claims are as follows: (1) the trial court abused its discretion in denying his motion for continuance to secure Dr. William Sybers as a witness; (2) the prosecutor's cross-examination of appellant about his conversation at the mall with the victim's family, the sunglasses he gave to a friend, and a necklace he pawned, was beyond the scope of direct examination; (3) the trial court abused its discretion by allowing Dr. James Lauridson, a pathologist who had not performed the victim's autopsy, to testify as to the manner and cause of death of the victim; (4) the trial court erred in refusing to instruct the jury that prior convictions for non-violent felonies are not aggravating circumstances; (5) there was sufficient evidence presented at the trial concerning the statutory mitigator of extreme mental or emotional disturbance for the jury to be instructed on it; (6) the jury instruction on the cold, calculated, and premeditated aggravator is unconstitutional; (7) the jury instruction on the heinous, atrocious, or cruel aggravator is unconstitutional; (8) there is not competent and substantial evidence to support the trial court's finding of the heinous, atrocious, or cruel aggravator; (9) there is not competent and substantial evidence to support the trial court's finding of the cold, calculated, and premeditated aggravator; and (10) death is a disproportionate sentence.
[7] In November 1992, the state notified defense counsel that it would be calling Dr. James Lauridson. Dr. Lauridson, who is a pathologist, did not perform the victim's autopsy but would nevertheless testify as to the manner and cause of death of the victim. Despite this knowledge, the defense did not list Dr. Sybers, who did perform the victim's autopsy, as a possible witness on its witness lists filed four months later. Instead, defense counsel waited until March 26, 1993, after the state had rested, to request a continuance to "serve and call" Dr. Sybers after he returned to his office the following week. Defense counsel could not confirm that Dr. Sybers had agreed to be a witness or that he would be available to testify. In turn, defense counsel could not, and did not, make any showing about what Dr. Sybers' "substantially favorable testimony" would be. Lastly, defense counsel made no showing of material prejudice.
[8] Geralds also asserts the trial court erred in three other related respects: (1) the trial court improperly denied defense counsel the right to rebut the autopsy procedures Dr. Sybers used and the right to present to the jury the possible unreliability of the materials upon which Dr. Lauridson based his opinion; (2) the trial court's admission of certain medical evidence constituted improper judicial notice and (3) this same evidence amounted to hearsay evidence without showing that Dr. Sybers was unavailable. There is no merit to these claims.
[9] Our conclusion was based on the fact that mitigating factors are for the defendant's benefit, and the state should not be allowed to present damaging evidence against the defendant to rebut a mitigating circumstance that the defendant expressly conceded does not exist. Id. at 978.
[10] It appears that defense counsel erroneously assumed that the state could impeach Geralds on cross-examination with the number of his prior convictions.
[11] § 921.141(6)(b), Fla.Stat. (1993).
[12] The cases cited by appellant to support the giving of jury instructions on this mitigator are not dispositive. In each of those cases, some evidence was presented that the defendant was either under the influence of some drug around the time of the murder, or suffered from a pervasive mental condition that affected him every day. See Bryant v. State, 601 So.2d 529, 532-33 (Fla.1992) (holding that evidence that defendant suffered emotional problems resulting from his mental retardation and physical disability was sufficient to require jury instruction on mitigating factor of extreme mental or emotional disturbance); Stewart v. State, 558 So.2d 416, 420 (Fla.1990) (holding that evidence that defendant was drunk most of the time and had a history of chronic alcohol and drug abuse, together with opinion testimony of doctor that defendant was drunk at time of shooting and that his control over his behavior was reduced by alcohol abuse, required instruction on impaired capacity); Smith v. State, 492 So.2d 1063, 1067 (Fla.1986) (holding that evidence which indicated that defendant had smoked marijuana on night of murder was sufficient to justify giving instructions for reduced capacity and extreme emotional disturbance).
[13] Appellant also cites to Teffeteller v. State, 439 So.2d 840 (Fla.1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984), for the proposition that living in pain for even several minutes does not qualify the crime for the heinous, atrocious, or cruel aggravating circumstance. This statement is truebut only in the context of Teffeteller`s wholly different factual scenario. In that case, unlike the instant case, the only trauma experienced by the victim was one shotgun blast to the abdomen. We found that the "fact that the victim lived for a couple of hours in undoubted pain [after the shotgun blast] and knew that he was facing imminent death, horrible as this prospect may have been, does not set this senseless murder apart from the norm of capital felonies." Id. at 846. Accordingly, appellant's reliance on Teffeteller is misplaced.
[14] In the direct appeal, we reasoned as follows with respect to the cold, calculated and premeditated aggravator:

The State contends that the evidence at trial established more than simple premeditation. The State argues that Geralds planned the crime for a week after interrogating the Pettibone children in the mall; Geralds ascertained when family members would be present in the house; Geralds brought gloves, a change of clothes, and plastic ties with him to the house; Geralds left his car at a location away from the house so that no one would see it or identify it later; Geralds bound and stabbed his victim.
Geralds argues that this evidence establishes, at best, an unplanned killing in the course of a planned burglary, and that a planned burglary does not necessarily include a plan to kill. Geralds offers a number of reasonable hypotheses which are inconsistent with a finding of heightened premeditation. Geralds argues, first, that he allegedly gained information about the family's schedule to avoid contact with anyone during the burglary; second, the fact that the victim was bound first rather than immediately killed shows that the homicide was not planned; third, there was evidence of a struggle prior to the killing; and fourth, the knife was a weapon of opportunity from the kitchen rather than one brought to the scene.
Thus, although one hypothesis could support premeditated murder, another cohesive reasonable hypothesis is that Geralds tied the victim's wrists in order to interrogate her regarding the location of money which was hidden in the house. However, after she refused to reveal the location, Geralds became enraged and killed her in sudden anger. Alternatively, the victim could have struggled to escape and been killed during the struggle.
In light of the fact that the evidence regarding premeditation in this case is susceptible to these divergent interpretations, we find the State has failed to meet its burden of establishing beyond a reasonable doubt that this homicide was committed in a cold, calculated, and premeditated manner. Consequently, the trial court erred in finding this aggravating circumstance.
Geralds, 601 So.2d at 1163-64.
[15] The trial judge specifically stated in his sentencing order that he would impose the death penalty even without the cold, calculated, and premeditated aggravator. The judge was well aware, of course, of this Court's previous finding as to this aggravator, and, no doubt, realized that this issue would receive close scrutiny on appeal. Under our harmless error analysis, we independently examine all of the surrounding facts and circumstances and do not base our conclusions on the single subjective opinion of a trial judge. For this reason, we do not rely solely on the trial judge's explicit finding that even if we found the cold, calculated, and premeditated aggravator unsupported by the evidence, the remaining two aggravators would still far outweigh the mitigating factors making death still an appropriate sentence.
[16] Contrary to Geralds' position, we have found that it is not always harmful error when a trial court erroneously finds the cold, calculated, and premeditated aggravator. See, e.g., Capehart v. State, 583 So.2d 1009 (Fla.1991); Rivera v. State, 545 So.2d 864 (Fla.1989); Mitchell v. State, 527 So.2d 179 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988); Rogers v. State, 511 So.2d 526 (Fla.1987).
[17] Compare Cherry v. State, 544 So.2d 184 (Fla. 1989) (affirming death penalty when victim was beaten to death and three aggravators were presentprior conviction of a violent felony, murder committed for pecuniary gain, and the murder was heinous, atrocious, or cruelbut no mitigation), cert. denied, 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 963 (1990); Bertolotti v. State, 476 So.2d 130 (Fla.1985) (affirming death sentence when victim was strangled, beaten, and repeatedly stabbed with two knives and murder was heinous, atrocious, or cruel, was committed during the course of a robbery, defendant had three prior violent felony convictions and no mitigation) and Breedlove v. State, 413 So.2d 1 (Fla.) (affirming death sentence when victim suffered single stab wound while asleep in bed and death was heinous, atrocious, or cruel, was committed during the course of a burglary, defendant had prior conviction of violent felony and no mitigation), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), with Nibert v. State, 574 So.2d 1059 (Fla.1990) (stating that even when victim suffered multiple stab and defensive wounds and death was heinous, atrocious, or cruel, substantial mitigation, including diminished capacity, may make the death penalty inappropriate); Smalley v. State, 546 So.2d 720 (Fla.1989) (given substantial mitigation, death penalty was inappropriate even though killing was heinous, atrocious, or cruel) and Livingston v. State, 565 So.2d 1288 (Fla.1988) (death sentence is disproportionate when mitigating circumstances of youth, abusive childhood, inexperience, immaturity, marginal intelligence, and extensive substance abuse effectively outweigh two aggravating circumstances of previous conviction of violent felony and committed during armed robbery).