SUAREZ, J.
Anthony Banmah was found guilty of two counts of first-degree murder and one count of armed robbery, pursuant to jury verdict. He was sentenced to three concurrent life terms. He appeals from the judgments of conviction and sentences. We affirm.
Banmah and two others in ski masks robbed an Opa Locka flea market jewelry store and in the process, the proprietor and his wife, Jonada and Angela Campos, were shot to death. The son, Marlon Campos, was also injured during the robbery, but he was unable to identify the perpetrators because they wore ski masks, and because he was knocked to the ground by one of the assailants prior to the shootings. Witnesses at a nearby tire shop saw two men entering, then fleeing, the flea market holding what appeared to be ski masks. A driver picked up the two fleeing men and sped away. One of the fleeing men dropped his ski mask as well as a bag of jewelry. The victims’ son identified the mask and the jewelry; the DNA extracted from the mask statistically matched a sample taken from Banmah. Based on the DNA match, police placed a photo of Ban-mah in a photo lineup. The tire shop witnesses positively identified Banmah as most resembling one of the men they saw fleeing the market. Once the witnesses identified Banmah from photo lineup, police arrested and interrogated him. Ban-mah gave an oral statement relating the details of the crime, but denied being the one who held or shot the gun.
Mr. Perez, one of the tire store witnesses, gave a pre-trial deposition in which he stated that he had difficulty making an identification from the photos because black people looked so similar to each other. At trial, on cross-examination, defense counsel questioned Perez about this statement; Perez did not deny making the statement, but testified that he did not remember making that statement. The trial court then refused to allow defense counsel to introduce the deposition statements into evidence relating to Perez’ difficulty identifying black people by them facial features.
Over defense counsel’s renewed objection, Medical Examiner Dr. Hyma was allowed to testify concerning the findings contained in the autopsy report prepared by Dr. Emma Lew, M.E., who was unavailable for trial. Dr. Hyma testified that he reviewed all of the documents prepared by Dr. Lew, and concluded that the cause of death for both victims was gunshot.
*103 On appeal, Banmah claims that the trial court erred by admitting the findings contained in the autopsy reports through the testimony of Dr. Hyma, rather than the unavailable Dr. Lew. He argues that this is a violation of his constitutional right to confront witnesses against him because the autopsy report is a testimonial statement prepared in anticipation of trial and designed to establish cause of death, one of the elements of the first-degree murder charge against him. We disagree.
Florida cases explicitly hold that it is proper to permit a substitute medical expert to testify as to cause of death despite the fact that the expert did not perform the autopsy, when the substitute medical expert relies on the autopsy report. See Schoenwetter v. State, 931 So.2d 857 (Fla.2006) (holding that trial court did not abuse its discretion to allow substitute medical examiner to testify, where original M.E. was unavailable; medical examiner who did not perform autopsy could rely on medical files, chart and conversations with physician who conducted autopsy in forming opinion on cause of death); accord Linn v. Fossum, 946 So.2d 1032 (Fla.2006); Conahan v. State, 844 So.2d 629, 634 (Fla.2003) (allowing the substitute medical examiner to testify regarding the autopsy report prepared by original medical examiner, who was unavailable to testify); Brennan v. State, 754 So.2d 1 (Fla.1999) (finding that, because the substitute medical examiner made independent conclusions using objective evidence, the trial court did not abuse its discretion in permitting her to testify); Geralds v. State, 674 So.2d 96 (Fla.1996) (holding it proper to permit am M.E. to testify as to cause of death, despite that the M.E. did not perform the autopsy); Capehart v. State, 583 So.2d 1009 (Fla.1991) (finding admission of M.E.’s testimony proper even in absence of admitted autopsy report, where M.E. relied on the autopsy and toxicology reports, evidence receipts and photos, and all other proper documentation in the case). Capehart relied on section 90.704, Florida Statutes (1987), which provided that an expert may, in forming an opinion, rely on facts and data not in evidence if those facts are of a type reasonably relied on by experts in the subject to support the opinion expressed. Capehart, 583 So.2d at 1012; Bender v. State, 472 So.2d 1370, 1371 (Fla. 3d DCA 1985) (finding the hearsay rule poses no obstacle to expert testimony premised upon tests, records, data, or opinions of another, where such information is of a type reasonably relied upon by experts in the field); accord § 90.704, Fla. Stat. (2010). In Capehart, the autopsy report was not introduced into evidence, but the autopsy photographs were admitted without objection.
Although defense counsel objected to the substitute M.E.’s testimony at Ban-mah’s trial, the determination of whether the witness was qualified to express an expert opinion was a matter within the discretion of the trial judge, and finding no clear showing of error, this ruling will not be reversed. See Brennan v. State, 754 So.2d at 4 (citing Ramirez v. State, 542 So.2d 352 (Fla.1989)). Dr. Hyma’s expert testimony was not used as a conduit for the introduction of otherwise inadmissible evidence. See Linn, 946 So.2d at 1038; cf., Gonzalez v. State, 777 So.2d 1068, 1070 (Fla. 3d DCA 2001) (finding reversible error where, without any prior warning or notice to the defense, the state’s M.E. expert was permitted to testify to new matters outside of the autopsy report that were key to the State’s case). Further, autopsy reports are non-testimonial because they are prepared pursuant to a statutory duty, and not solely for use in prosecution. Finally, and most obviously, the victims died because they were shot; this is the basis of the charges against the *104 defendant and there is no evidence to contradict this. The autopsy photos were admitted without objection, and show gunshot wounds. Dr. Hyma’s testimony was subject to cross-examination, and based on the record and case precedent, we find no error in the trial court’s admission of Dr. Hyma’s testimony concerning the cause of death.
Banmah next argues that the trial court erred by refusing to allow the defendant to introduce witness Perez’s prior deposition statement-that he had trouble identifying black people because they look so similar to one another-n order to impeach that witness’s photo identification of the defendant. At trial, defense counsel asked the witness, “[W]hen you picked his [defendant’s] picture out it was based not on the person’s face, but just his ... build and shape, is that correct?” Perez answered, “[Y]es, exactly.” Defense counsel then asked Perez if he remembered that he told attorneys at deposition that he had “a problem picking out the [defendant’s] face because black people are so similar to each other, and that he could not say [whether the photo he picked out was of the defendant].” Perez answered that he did not remember saying that. When defense counsel then asked him if he denied saying that, Perez answered “I don’t deny it, I don’t remember saying it.” The witness specifically admitted that he did not base his identification of Banmah’s photo on facial features, but on the general build and shape of the defendant.
We have considered the entire testimony in context and conclude that witness Perez’s statement at trial did not conflict with his earlier deposition statement, such that there was really nothing to impeach. Counsel’s line of questioning essentially paraphrased Perez’s deposition and got the point across to the jury that Perez’s photo identification of the defendant was weak. Introducing the deposition statement would have been cumulative, and denying it did not prevent the defendant from fairly presenting his case. Because the scope and limitation of cross-examination are within the trial court’s discretion, we find no error in the trial court’s decision to deny defense counsel’s request on cross-examination to read the witness’s deposition statement into the record. See McCoy v. State, 853 So.2d 396, 406 (Fla. 2003) (reviewing trial court decisions as to the scope of cross-examination on an abuse of discretion standard).
We affirm the defendant’s convictions and sentences.