717 So.2d 114 (1998)
Marc Steven NATHANSON, Michael Nathanson, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, Appellants,
v.
Carolyn A. HOUSS, D.O. and Mitchell Marks, D.O., her husband, Appellees.
Nos. 97-1523, 97-2511 and 97-2055.
District Court of Appeal of Florida, Fourth District.
September 9, 1998.
*115 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, Elizabeth K. Russo and Lee Katherine Goldstein of Russo, Wells & Associates, P.A., Miami, and Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, West Palm Beach, for appellants.
Robert M. Montgomery, Jr. and John B. Moores of Montgomery and Larmoyeux, West Palm Beach, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellees.
SHAHOOD, Judge.
This opinion addresses two appeals which have been consolidated (97-1523 & 97-2511), as well as an appeal from the judgment for attorney's fees, which was not consolidated (97-2055).
Appellants appeal the final judgment awarding damages to appellees in this personal injury case. The case arose out of a slow-speed, rear-end collision that occurred in October 1994. While stopped in a right-hand turn lane, appellant, Marc Nathanson, allowed the front of his car to come into contact with the rear of the car driven by appellee, Dr. Houss. Appellants conceded that the accident was caused by the negligence of Marc Nathanson, but disputed the extent of the injuries caused by the accident.
Appellees presented evidence indicating that Dr. Houss was experiencing back pain in the weeks following the accident. In November 1994, a magnetic resonance imaging (MRI) scan was taken of Dr. Houss' spine. In December 1994, Dr. Houss was examined by Dr. Magana who determined, based on the MRI and his physical exam, that Dr. Houss was suffering from a herniated disk. Dr. Magana performed surgery on Dr. Houss in February 1995, and testified that he observed the herniated disk at that time. The *116 damages sought by appellees included those related to the herniated disk.
Appellants, in support of their argument that the October accident did not cause the disk in Dr. Houss' spine to herniate, presented the testimony of three doctors. An orthopedic surgeon testified that the November MRI indicated that Dr. Houss had a bulge in the disk "that was not unusual for a degenerated disk." He testified further that the degenerative process occurs over years. Finally, he testified that "I don't see on these films any evidence of what's called a disk herniation or protrusion where pieces of the disk actually rupture out." A neurosurgeon testified that the November MRI did not indicate a herniated disk in Dr. Houss' spine. Finally, a radiologist testified that the November MRI showed a disk bulge, but that it did not show a disk herniation. She also stated that disk bulges can progress to disc herniations. In addition to this testimony, Dr. Houss' own treating physician testified that everyday activities can cause the type of herniated disk he diagnosed in Dr. Houss.
At the close of the evidence, appellees moved for a directed verdict on the issue of whether the October accident caused all of Dr. Houss' injuries, including the herniated disk. In spite of appellants' arguments that there was sufficient evidence for the jury to conclude that the accident did not cause Dr. Houss' herniated disk, the trial court granted the motion and directed the verdict in favor of appellees on the issue of causation. We reverse.
A directed verdict cannot stand where there is any competent evidence to support the non-movant's position. See Allen v. Florida Power Corp., 253 So.2d 401 (Fla.1971). A motion for directed verdict "admits the truth of all facts in evidence, and every reasonable conclusion or inference based on those facts, which is favorable to the non-moving party." Stringer v. Katzell, 674 So.2d 193, 195 (Fla. 4th DCA 1996). Here, the testimonies of the three expert witnesses stating that the post-accident MRI shows that Dr. Houss did not have a herniated disk at that time support a reasonable conclusion that the accident did not cause the herniated disk.
Appellees argue that even if the accident did not cause the herniated disk, they are nevertheless entitled to a directed verdict under Stuart v. Hertz, 351 So.2d 703 (Fla. 1977). We disagree. In Stuart, quoting the following from J. Ray Arnold Lumber Corp., etc v. Richardson, 105 Fla. 204, 141 So. 133, 135 (1932), the court recognized that Florida adheres to the principle that
[w]here one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor. Texas & Pacific Ry. Co. v. Hill, 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918.
In order to establish an initial tortfeasor's liability for an aggravation or increase of the original injury under Stuart, a plaintiff must establish that the treating physician caused the aggravation or increase. Appellees argue that the testimony of appellant's experts that the November MRI does not show a herniated disk, implied that Dr. Houss' treating physician performed unnecessary surgery. However, Dr. Houss' treating physician testified that he diagnosed the herniated disk in December. Another physician testified that a herniated disk can be caused by everyday activities. It would therefore be reasonable for the jury to be able to conclude from this testimony that Dr. Houss' herniated disk was caused by everyday activities after the November MRI, but before the December diagnosis. Therefore, the facts in evidence supported a reasonable conclusion that the herniated disk was not caused by Dr. Houss' treating physician, and a directed verdict in favor of plaintiffs/appellees based on Stuart was inappropriate.
We address one additional issue raised by appellant. The trial court excluded *117 the testimony of appellant's expert witness, Dr. Alvin Hyde, based on the court's conclusion that Dr. Hyde was not "qualified" to render an opinion as to whether a slow-speed, rear-end collision could cause the type of injury alleged by plaintiff. We find that the trial court erred by excluding the testimony on that basis. Although the admission of expert testimony lies within the trial court's discretion, that discretion is not without limits. See Honeywell, Inc. v. Trend Coin Co., 449 So.2d 876 (Fla. 3d DCA 1984), quashed in part on other grounds, Trend Coin Co. v. Honeywell, Inc., 487 So.2d 1029 (Fla.1986). Dr. Hyde has a lengthy curriculum vitae detailing extensive experience in the fields of medicine and biophysics. His experience includes work with the Air Force and NASA studying human tolerance to, and the effects of, acceleration on the human body. Dr. Hyde has also worked for the National Highway Traffic Safety Commission and written books on the crashworthiness of vehicle structures and crash injuries. Given Dr. Hyde's expertise and experience, we hold that the trial court abused its discretion by finding that Dr. Hyde was not qualified to render an opinion about whether a slow-speed, rear-end collision could cause the type of injury alleged by appellees.
Finally, in related case 97-2055, appellants appeal the judgment awarding attorney's fees to appellees. Having reversed the underlying judgment, we also reverse the trial court's award of attorney's fees to appellees since the statutory basis for the award of fees is dependent on the judgment obtained by the plaintiff. See § 768.79, Fla. Stat. (1990); see also, Emory v. Florida Freedom Newspapers, 687 So.2d 846 (Fla. 4th DCA 1997).
REVERSED AND REMANDED FOR A NEW TRIAL.
GUNTHER and FARMER, JJ., concur.