778 So.2d 443 (2001)
George JOHNNIDES, Appellant,
v.
AMOCO OIL COMPANY, INC., Appellee.
Nos. 3D00-1289, 3D00-635.
District Court of Appeal of Florida, Third District.
February 14, 2001.
Juan P. Bauta, II, for appellant.
Shelley Ray Senecal (Fort Lauderdale), for appellee.
Before SCHWARTZ, C.J., and LEVY and SORONDO, JJ.
SCHWARTZ, Chief Judge.
The appellant is the owner of property on Miami Beach which sustained extensive ground contamination. He sued Amoco Oil Company, the owner of the gas station next door, upon the contention, supported by the expert testimony of a Ph.D. chemist, that the pollution came from there. Amoco claimed, and its own expert witness so testified, that the spoilage originated on the plaintiff's own premises. We are compelled to reverse the jury verdict and judgment which resolved this apparently simple controversy in favor of Amoco because the entire trial was itself polluted by the egregiously unprofessional final argument of Amoco's counsel, Dale R. Hightower.
Hightower's argument contained many serious departures from the standards of conduct we require of attorneys in our jurisdiction, any one of which would alone have required reversal. We choose to include in the main body of this opinion, however, only the one we regard, after close competition with several other candidates,[1] as the worst: the passage in which *444 Hightower, based on nothing but his own cynical imagination, boldly and unashamedly accused opposing counsel of conspiring with the plaintiff's expert to commit a fraud on the jury:
So what does [plaintiffs counsel] have to do? He goes out and finds Dr. Padva and says, Dr. Padva, what we are going to do, we are going to try to get a naive jury. And then what we are going to do is, I need you to look at all of these tests and somehow come up with some scientific gobble-dee-cock that confuses the jury. ...
Extensive citation of authority is unnecessary to demonstrate that baseless attacks of this kind upon the integrity of counsel, or any other player in the case, are both contemptible and condemnable.[2] *445 Lewis v. State, 780 So.2d 125 (Fla. 3d DCA 2001); Wolcott v. State, 774 So.2d 954 (Fla. 5th DCA 2001); Owens-Corning Fiberglas Corp. v. Crane, 683 So.2d 552, 554 n. 2 (Fla. 3d DCA 1996); Cohen v. Pollack, 674 So.2d 805, 806 n. 1 (Fla. 3d DCA 1996);[3]Owens-Corning Fiberglas Corp. v. Morse, 653 So.2d 409, 410 (Fla. 3d DCA 1995), review denied, 662 So.2d 932 (Fla.1995);[4] see also Kaas v. Atlas Chemical Co., 623 So.2d 525 (Fla. 3d DCA 1993). Even in the absence of preservation, we have no doubt that the final argument meets all the conditions for the granting of a new trial stated in Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000). See also Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla.1986). Because, however, appropriate motions for mistrial and objections were in fact made below, a new trial is all the more clearly in order. See Eastern Steamship Lines, Inc. v. Martial, 380 So.2d 1070 (Fla. 3d DCA 1980), cert. denied, 388 So.2d 1115 (Fla.1980); Regan Ins. Agency v. Krause & Sons, Inc., 325 So.2d 35 (Fla. 3d DCA 1976); Magid v. Mozo, 135 So.2d 772 (Fla. 1st DCA 1961).
Reversed for a new trial.[5]
NOTES
[1] Among these are:

(a) Numerous other claims that opposing counsel was "trying to confuse you guys" and "misleading the jury"some of it accomplished by actual finger pointing directly at counsel. Lewis v. State, 780 So.2d 125 (Fla. 3d DCA 2001).
(b) Repeated references to matters which had been appropriately excluded from evidence accompanied by impermissible charges that plaintiff's counsel had improperly tried to prevent the jury from hearing them. See Lewis; Wolcott v. State, 774 So.2d 954 (Fla. 5th DCA 2001). Thus Hightower said:
As a matter of fact, when the testing is trying to be brought into evidence, what does he do, objection, no, we don't want that in. Okay, he tries his case his way. They have to prove their case. I am just asking you gentleman, it is common sense, don't you think that if you are going to prove your case that Amoco contaminated his land, the most important people would be those three people and all of their reports. But, no, not only not bring them to you, but they kept them from getting them to you.
(c) Repeated references to matters which were not only not in evidence but untrue. Knight v. State, 672 So.2d 590 (Fla. 4th DCA 1996); see Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla.1986). A single portion of the argument contains no less than three such examples:
MR. HIGHTOWER:that he is asking you to look at this piece of paper and says the only evidence of any newspaper chemicals spilled into the ground is on this piece of paper and it is only seven gallons this day what was found in 20 years of having a newspaper facility on this property that the ink tank is in the back.
Where is the ink tank? It's back here. The garbage is back here. And this is unpaved from '67 to '75.
Knowing people and human nature as you can use your own common sense and you can infer from the facts, that when people come out here and they are in a hurry on Wednesday or Thursday or Friday night and the boss is not looking and there is no DERM around and they have to clean the plates or they have to dump some of the oil or whatever like this in this unpaved lot, that for 20 years, ten years being unpaved, it is going into the ground. And it is not being done by any environmental regulation. You should use your common sense in deciding that.
Does it make sense the only type of ink that was ever spilled out of this newspaper building used by these people is just this one seven gallons? Why do we know that? Because when they did the soil samplings, when they did the soil samplings this is zero to two feet. Here is the plume. This whole thing right here, this is the plume. People have been dumping it into the ground. And it's been draining into a French drain for 20 years. And where is the smoking gun so-to-speak? How we know it is coming from the ink tank, whether it is leaking or people just cleaning plates or solvents or whatever they need to do? It comes back to this. And I think this is where the highest concentration is at two to four feet. Remember this is up to zero to two feet in land. But down deeper right there right under the ink tank.
Don't be fooled by counsel's argument that you can only[e.s.]
(d) Repeated instances of vouching for the truthfulness of his own case. But see Caraballo v. State, 762 So.2d 542 (Fla. 5th DCA 2000); Rivero v. State, 752 So.2d 1244 (Fla. 3d DCA 2000).
[2] While in light of Hightower's egregious conduct, we feel duty bound by Canon 3D(2), Code of Judicial Conduct hereby to report him to the Florida Bar, we have no illusions that this will have any practical effect. Our skepticism is caused by the fact that, of the many occasions in which members of this courtreluctantly and usually only after agonizing over what we thought was the seriousness of doing sohave found it appropriate to make such a referral about a lawyer's conduct in litigation, e.g., Michaels v. State, 773 So.2d 1230 (Fla. 3d DCA 2000); Afrazeh v. Miami Elevator Co., 769 So.2d 399 (Fla. 3d DCA 2000); Visoly v. Security Pacific Credit Corp., 768 So.2d 482 (Fla. 3d DCA 2000); Quinones v. State, 766 So.2d 1165 (Fla. 3d DCA 2000); Osman v. McKee, 762 So.2d 950 (Fla. 3d DCA 2000); Fonticoba v. State, 725 So.2d 1244 (Fla. 3d DCA 1999); Izquierdo v. State, 724 So.2d 124 (Fla. 3d DCA 1998); Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998), review denied, 725 So.2d 1109 (Fla. 1998); Southern Trenching, Inc. v. Diago, 600 So.2d 1166 (Fla. 3d DCA 1992), review denied, 613 So.2d 3 (Fla.1992); Sharff, Wittmer & Kurtz, P.A. v. Messana, 581 So.2d 906 (Fla. 3d DCA 1991), review denied, 592 So.2d 681 (Fla.1991); Rapid Credit Corp. v. Sunset Park Centre, Ltd., 566 So.2d 810 (Fla. 3d DCA 1990)(Schwartz, C.J., specially concurring); Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla.1986); Molina v. State, 447 So.2d 253 (Fla. 3d DCA 1983), pet. for review denied, 447 So.2d 888 (Fla.1984); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982), none has resulted in the public imposition of any discipline not even a reprimandwhatever. See also Morris v. NN Investors Life Ins. Co., 553 So.2d 1306 (Fla. 3d DCA 1989)(Schwartz, C.J., dissenting), review denied, 563 So.2d 633 (Fla.1990). In fact, the reported decisions do not reflect that the Bar has responded concretely at all to the tide of uncivil and unprofessional conduct which has been the subject of so much article-writing, sermongiving, seminar-holding and general handwringing for at least the past twenty years. See 5-H Corp. v. Padovano, 708 So.2d 244 (Fla.1998)(referring to Bar's finding of no probable cause for discipline of attorney who used expletives in motion for rehearing). Perhaps the ultimate example of the Bar's attitude toward the problem is the case of Harvey Hyman, who was the subject of three separate complaints by this court to the Bar, see Fonticoba, 725 So.2d at 1244; Izquierdo, 724 So.2d at 124; Lewis, 711 So.2d at 205; see also State v. Benton, 662 So.2d 1364 (Fla. 3d DCA 1995), but who avoided any sanction by entering a diversion program which consisted entirely of the arduous requirement of attending a day-long seminar on trial ethics.

Speaking for himself alone, the present writer has grown tired of felling trees in the ethically empty forest which seems so much a part of the professional landscape in this area. Perhaps the time has come to apply instead the rule of conservation of judicial resources which teaches that a court should not require a useless act, even of itself.
[3] `[Appellants' counsel] and his witnesses will say anything,' `[H]e had to create a defense,' and `He can't even tell the truth about a picture staring at him.... How can he continue to misrepresent things to the jury?'

* * *
`[S]he [appellees' witness] told the truth,' `[E]verything we told you is true,' and `Everything we've been telling you about Brittany Pollack, every single last detail is true.'
Cohen v. Pollack, 674 So.2d at 806 n. 1.
[4] The facts are what this case is all about and you have heard Mr. Gonzalez [plaintiffs' counsel] for nine days. He is excellent at confusing issues. He is excellent at hiding the ball. He is a master of trickery.

Owens-Corning Fiberglas Corp. v. Morse, 653 So.2d 2d at 410.
[5] Our holding renders the appellee's separate appeal in case no. 3D00-635 moot. We therefore do not consider it.