947 So.2d 648 (2007)
Glenna FISHER, Appellant,
v.
Frank PEREZ, Appellee.
No. 3D05-519.
District Court of Appeal of Florida, Third District.
January 24, 2007.
*649 Kubicki Draper and Sharon C. Degnan, Fort Lauderdale, for appellant.
Neufeld, Kleinberg & Pinkiert and David Kleinberg and Antoinette R. Appel, for appellee.
Before CORTIÑAS, ROTHENBERG, and LAGOA, JJ.
CORTIÑAS, Judge.
Appellant, Glenna Fisher ("Fisher"), and Appellee, Frank Perez ("Perez"), were involved in a car accident on the Palmetto Expressway. Perez allegedly suffered various injuries in the accident and filed suit against Fisher. The lawsuit proceeded to trial where the focus was whether Perez's injuries were caused by the accident or were instead the result of a pre-existing degenerative condition. The trial was scheduled to last three days, commencing on November 29, 2004. Fisher planned to call only one witness, Dr. Piper, to testify as an expert. Dr. Piper was disclosed as Fisher's expert witness, and Perez had taken a brief discovery deposition of Dr. Piper. Dr. Piper was not subpoenaed to attend trial; however, defense counsel confirmed Dr. Piper's attendance by phone during the lunch recess of the first day of trial. Later that same afternoon, defense counsel unexpectedly received a fax from Dr. Piper's office, explaining that Dr. Piper was suffering from complications from a recent back surgery, was partially paralyzed, highly medicated, and, as such, unable to testify the following day. Immediately upon receipt of this fax, defense counsel alerted the trial court to the situation. The trial court indicated that the issue would be discussed after the jury was sent home. When the court re-addressed the issue, defense counsel requested that the trial court grant a mistrial or continuance due to Dr. Piper's unavailability. The trial court denied the motions, but asked defense counsel to provide more information the following day.
Defense counsel renewed his motions the following morning and explained that although he was unable to reach Dr. Piper, he had spoken to Dr. Piper's office manager *650 who explained that Dr. Piper had "a relapse" the weekend before trial and was put on medication. Despite this, Dr. Piper was still planning to work the week of the trial. However, when he came into work on Monday, his staff noticed that he was too medicated to treat patients and sent him home Monday afternoon.
The trial court then inquired whether Dr. Piper's deposition testimony could be used in place of live testimony, and defense counsel explained that Dr. Piper had modified his opinion since the time of his deposition testimony based on new information about Perez. This modified opinion was recorded in an unsworn addendum report. Perez's counsel ultimately waived objection to the admissibility of the addendum report, and also agreed to allow Dr. Piper's curriculum vitae into evidence.[1] Over Fisher's objection, the trial court denied the motions for continuance and mistrial, although defense counsel indicated he would continue to try to reach Dr. Piper and arrange a video deposition.
Rule 1.460 of the Florida Rules of Civil Procedure states that
[a] motion for continuance shall be in writing unless made at a trial and, except for good cause shown, shall be signed by the party requesting the continuance. The motion shall state all of the facts that the movant contends entitle the movant to a continuance. If a continuance is sought on the ground of nonavailability of a witness, the motion must show when it is believed the witness will be available.
Fla. R. Civ. P. 1.460.
In addition to the requirements in Rule 1.460, a party seeking a motion for continuance must show "(1) prior due diligence to obtain the witness's presence; (2) that substantially favorable testimony would have been forthcoming; (3) that the witness was available and willing to testify; and (4) that the denial of the continuance would cause material prejudice." State v. J.G., 740 So.2d 84, 85 (Fla. 3d DCA 1999) (citing Geralds v. State, 674 So.2d 96, 99 (Fla.1996)).
In support of the trial court's denial of the motion for continuance, Perez contends that these technical requirements were not met and that the motion for continuance was legally insufficient. We disagree.
The motion at issue here was made during trial and it was therefore proper to make the motion orally. See Fla. R. Civ. P. 1.460. At all times, Dr. Piper's whereabouts were known and he remained willing to testify when physically able. Cf. Safeway Ins. Co. v. Saxon, 452 So.2d 60 (Fla. 3d DCA 1984)(affirming denial of motion for continuance where the defendant's whereabouts were unknown at the time the motion was before the trial court). There is no suggestion in the record that defense counsel attempted to hide or misrepresent the situation. Cf. Barclay v. Rivero, 388 So.2d 321, 322 (Fla. 3d DCA 1980)(affirming denial of motion for continuance where expert witness failed to appear, expert was noticed for the wrong trial date, and appellants' counsel was aware expert had a surgery scheduled the afternoon of trial but represented to the court that the surgery was an emergency). Instead, defense counsel disclosed to the court all the information he had, limited as it was, as soon as he obtained it.
The trial court directed defense counsel to read into the record the faxed letter he received from Dr. Piper's office. This letter stated that although it was uncertain when Dr. Piper would return to work, it would not be earlier than December 5th. *651 Defense counsel stated that he had attempted to contact the doctor overnight to determine whether the doctor would be able to go off his medication long enough to testify in a video deposition. Although he was only able to reach the doctor's office manager, defense counsel presented the information he had gathered overnight to the court the following morning.
Defense counsel also indicated his intent to submit an affidavit from Dr. Piper's office manager explaining Dr. Piper's unavailability. Given the unexpected nature of Dr. Piper's unavailability and the fact that the trial court did not address the motion for continuance until sometime after 5:00 p.m., with trial commencing the following morning at 9:30 a.m., it appears defense counsel did everything possible to investigate Dr. Piper's unavailability and provided the court with sufficient facts to grant the motion for continuance.

Lack of Affidavit
Perez makes much of the fact that Fisher's motion for continuance was not supported by affidavit or sworn testimony. However, given the sudden nature of Dr. Piper's unavailability and the time constraints within which defense counsel was working, it is understandable that there would be a few hours delay in submitting affidavits. Further, it should be noted that the 1967 Authors' Comment to Rule 1.460 acknowledges that the rule does not require affidavits to support a motion for continuance. Fla. R. Civ. P. 1.460 Authors' Comment-1976; see also Myers v. Siegel, 920 So.2d 1241, 1244 (Fla. 5th DCA 2006)(recognizing that the rule does not require affidavits).

Lack of Subpoena
Next, Perez contends that defense counsel's failure to subpoena Dr. Piper shows that defense counsel failed to use due diligence to secure his appearance. However, there has been no case explicitly stating a subpoena is the only way to satisfy the due diligence requirement. See, e.g., Photo 60 of Miami Int'l v. Roundtree, 541 So.2d 687, 688 (Fla. 3d DCA 1989)(reversing denial of continuance with no mention of whether expert witness was subpoenaed); Taylor v. Inst. for Medical Weight Loss, 863 So.2d 398, 399 (Fla. 4th DCA 2003)(same).

Due Diligence
Although we view a subpoena as evidence of due diligence, we realize that a subpoena would not have changed Dr. Piper's availability. Dr. Piper was unavailable because of a sudden and unforeseeable medical complication. Even if under subpoena, Dr. Piper likely would not have been present to testify in court, and even if he was physically present, Dr. Piper likely would not have been able to testify competently due to the medication he was taking. Thus, the lack of a subpoena had no practical effect on Dr. Piper's availability.
Having decided that the presence or absence of a subpoena, though relevant, is not determinative, we must look at what actions defense counsel actually took to ensure Dr. Piper's presence. Defense counsel contacted Dr. Piper on the Wednesday before Thanksgiving Day, approximately one week before trial, and the doctor confirmed he would be present. Defense counsel again contacted Dr. Piper during lunchtime the Monday after Thanksgiving Day to ensure Dr. Piper's presence at trial the following day. Again, Dr. Piper assured defense counsel he would be present. Both of these conversations occurred well after Dr. Piper's back surgery. Given these assurances, it is clear that defense counsel did not have any reason to doubt that Dr. Piper would appear at trial. Cf. Davenport v. State, 914 So.2d 1004 (Fla. 3d DCA 2005)(affirming denial of motion for continuance where witness' nonappearance was known *652 prior to the start of trial). Thus, it is clear that counsel used due diligence in securing Dr. Piper's appearance at trial. Cf. Geralds, 674 So.2d at 99 n. 7 (affirming denial of motion for continuance where counsel failed to subpoena the witness, counsel failed to list the witness on his witness list, and counsel waited until the State rested its case before making any effort to locate the witness).

Substantially Favorable Testimony and Material Prejudice
Likewise, defense counsel sufficiently explained what Dr. Piper would testify to and why his testimony was important. Dr. Piper was Fisher's only witness on the critical issue at trial, namely causation, and his testimony was intended to rebut the opinion of Perez's experts that the shoulder injury was caused by the accident. A strong preference exists in law for live testimony. See, e.g., Silverman v. Millner, 514 So.2d 77, 79 (Fla. 3d DCA 1987)(reversing denial of motion for continuance where the unavailable defendant's testimony was "necessary for a fair and adequate presentation of his case"); Jean v. Sanitation Inc., 596 So.2d 1245, 1247 (Fla. 4th DCA 1992)(noting that this court's decision in Silverman turned on the unforeseeability of defendant's illness and the need for the party's own live testimony); LoBue v. Travelers Ins. Co., 388 So.2d 1349, 1351 (Fla. 4th DCA 1980)(noting that the right to present evidence and call witnesses is perhaps the most important due process right of a party litigant). Live testimony was especially important in this case because Dr. Piper had changed his opinion between the time of his deposition and the addendum report.
In his deposition, Dr. Piper stated that the shoulder injury was permanent and was caused by the car accident, but then acknowledged that the injury could have been pre-existing and that his opinion would change if Perez's medical history differed from what was told to him. In the addendum report, Dr. Piper stated that his deposition was compatible with his opinion, but then stated that Perez did not require further surgical treatment, was fully employable, and that it was unlikely the injury was caused by the car accident. Without Dr. Piper's live testimony, the jury might not have understood what Dr. Piper's opinion was, or why he changed his mind. Further, the deposition was not taken for trial purposes nor was it videotaped. Thus, the jury could make no assessment of Dr. Piper's credibility. See LoBue, 388 So.2d at 1351 ("Nor did [the deposition] serve as an adequate substitute for the live appearance of the physician upon which the jury could make a valid determination of credibility in a trial which was largely a contest of experts.").
Also problematic is the fact that the deposition taken by Fisher's counsel was very short, and defense counsel asked very few questions of his own witness. Defense counsel did not ask any questions about the doctor's credentials or his experience with the type of injury at issue. In addition, defense counsel did not ask Dr. Piper to define and explain the medical terms he used during the deposition. The trial judge himself noted that although the deposition contained the expert's findings, "[h]e did not expound as to what matters specifically led to his findings." Finally, defense counsel planned to use Dr. Piper to rebut the testimony of Perez's experts. Not only would Dr. Piper's testimony have been substantially favorable to Fisher, it was the only evidence Fisher planned to present on the issue of causation. Fisher's entire case rested on Dr. Piper's testimony and was materially prejudiced by the trial court's unwillingness to accommodate Dr. Piper's unforeseen medical emergency.
*653 While a trial judge ordinarily has great discretion in ruling on matters during the course of a trial, such rulings must comport with fairness and due process. See Silverman, 514 So.2d at 78. Denials of motions for continuances in the face of a sudden unexpected medical emergency of either counsel, a party, or a witness have resulted in reversals on appeal in this and other courts. In Silverman, we found an abuse of discretion where the trial court required defense counsel to proceed to trial using deposition testimony of his client, taken by another attorney, when his client was suddenly hospitalized after suffering a stroke less than two days before trial. Id. Likewise, in Jean, the Fourth District reversed a trial court's denial of a continuance where the plaintiff, who lived in Haiti, was seriously injured in a car accident on his way to the airport to catch his flight to attend trial. Jean, 596 So.2d at 1245-47. Although the accident happened nearly a week before trial, counsel did not find out about the accident until one day before trial, citing Haiti's antiquated phone system and the fact that his client does not own or live near a telephone. Id. at 1246.
Although both Silverman and Jean involved the live testimony of a party, the live testimony of Fisher's sole medical expert was just as crucial in this case where the primary issue being litigated was causation. In fact, the Fourth District has recognized the importance of an expert in a case similar to the one at bar. See LoBue, 388 So.2d at 1351. Here, Dr. Piper was the only expert witness who did not think the injury was caused by the accident, and who did not think the injury was permanent. Just as the Fourth District concluded in LoBue that the expert's "testimony was essential to appellant's case," Dr. Piper's testimony was essential here. Id. Additionally, just as "[t]he bare-boned discovery deposition of the physician taken by the appellees and presented in part to the jury did not include all of the essential testimony sought to be presented by the live testimony of the witness," Dr. Piper's deposition here is similarly lacking. Id. Here, defense counsel read the deposition and addendum report to the jury. Fisher's counsel then focused on only the few lines from the deposition containing Dr. Piper's opinion that the shoulder injury was causally related. The trial court then denied any opportunity for defense counsel to redirect by reiterating the changed opinion contained in the addendum report.
We are also guided by our holding in Photo 60. In Photo 60, we held that the trial court's denial of defendant's request to extend the lunch recess by one hour to accommodate an expert witness was reversible error. 541 So.2d at 687. In that case, three medical experts testified for the plaintiff that the plaintiff suffered permanent injuries. Id. at 688. The defendant planned to call only one expert witness to contradict their diagnoses. Id. As such, this court found that "[b]y refusing to extend the lunch recess even one hour, the trial court deprived the jury of the only evidence and testimony essential to Photo 60's defense." Id.
Here, in requesting the continuance, defense counsel did not only seek to postpone the trial until Dr. Piper was well enough to testify live. Alternatively, defense counsel requested that he be given a day to get in touch with Dr. Piper directly, make arrangements for Dr. Piper to go off his medication long enough to record a deposition, and then be permitted to use this videotaped deposition at trial. As already noted, defense counsel had little time to contact Dr. Piper, the doctor treating Dr. Piper, or anyone else. Although we can understand the trial judge's hesitancy to postpone a trial, a one-day recess would have allowed defense counsel time to perpetuate the testimony of his sole medical *654 expert without undue delay in the trial court's schedule.
Because Dr. Piper was Fisher's only medical expert, his testimony would have been used to rebut the opinion of Perez's experts, his deposition was inadequate to convey his opinion to the jury, and his unavailability was sudden and unexpected, we find the trial court abused its discretion in denying Fisher's motion for continuance and we thereby reverse the decision of the trial court and remand for a new trial.
Reversed and remanded.
ROTHENBERG, Judge (specially concurring opinion).
I concur with both Judges Cortiñas and Lagoa that a new trial is mandated and agree with the analysis performed by each. I would grant a new trial based upon the trial court's failure to grant Fisher's motion for a continuance and plaintiff's counsel's improper statements in closing argument, and would conclude that each of these errors, standing alone, warrants reversal.
LAGOA, Judge (specially concurring).
I concur in the result but write separately to note that I would not reverse and remand based solely on the trial court's denial of Fisher's motion for continuance, which was requested midway through trial. Instead, I believe a new trial is necessary based on the other issues raised on appeal.
As stated in Judge Cortiñas's opinion, during the afternoon of the first day of trial, defense counsel received a fax from Dr. Piper's office explaining that Dr. Piper was suffering a relapse from back surgery, was partially paralyzed, highly medicated, and unable to testify the next day. Dr. Piper was the defense's sole expert witness. Upon learning of Dr. Piper's sudden and unexpected unavailability, defense counsel immediately moved for a continuance and/or mistrial. Plaintiff's counsel vehemently objected, and argued that Dr. Piper's deposition testimony and addendum report were sufficient evidence of his expert opinion. The trial court denied the defense motions.
Prior to presenting Dr. Piper's deposition testimony to the jury, defense counsel sought permission from the trial court to inform the jury of Dr. Piper's illness and why he would not be testifying live.[2] The trial court denied defense counsel's request.
Following the trial court's ruling, Dr. Piper's deposition testimony was read to the jury. After the testimony was read to the jury, defense counsel made an extensive *655 proffer regarding Dr. Piper's testimony if he had been able to testify at trial.[3]
During rebuttal closing, counsel for Perez, Mr. Kleinberg, knowing that Dr. Piper was unavailable due to a sudden illness, and knowing that the defense had been prevented from making the jury aware of the reasons for Dr. Piper's unavailability, argued the following to the jury:
He [Perez] didn't complain fast enough. And he's going to get up here and play nitty picky with a board certified orthopedic surgeon who says degenerative doesn't mean-he's reading from some little piece of paper he found on the damn Internet. It means this. I've got medical journals here. Where's Dr. Piper to come in and say any of that?
* * * *
I didn't try to hide anything. I brought in every single medical record. This man didn't get upset. I never 
Simply put, Plaintiff's counsel intentionally misled the jury regarding the reason Dr. Piper did not present live testimony at trial. Defense counsel promptly and correctly objected and moved for a mistrial. The trial court sustained the objection without providing a curative instruction and denied the motion for mistrial. Given the highly inflammatory and prejudicial nature of the statement, the motion for a mistrial should have been granted. Taken together, these issues warrant reversal and a new trial.
We review the denial of a motion for new trial for abuse of discretion. See Salnave v. Pub. Health Trust of Dade County, 624 So.2d 282 (Fla. 3d DCA 1993); Jones v. Airport Rent-A-Car, Inc., 342 So.2d 104 (Fla. 3d DCA 1977). "If the issue has been properly preserved, the legal standard for trial courts to use in deciding motions for new trial based upon counsel's improper argument is whether the comment was highly prejudicial and inflammatory." Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 585 (Fla. 2d DCA 1996)(disapproved of on other grounds by Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000)).
It is well settled that statements by counsel in closing argument which accuse *656 opposing counsel of hiding evidence and fraudulently preventing the presentation of relevant evidence constitute reversible error. See generally Wall v. Costco Wholesale Corp., 857 So.2d 975 (Fla. 3d DCA 2003)(reversal required because of comments made by defense counsel regarding the plaintiff's failure to call her daughter to testify where defense counsel knew daughter was estranged from parents); Hernandez v. Home Depot U.S.A., Inc., 695 So.2d 484, 485-86 (Fla. 3d DCA 1997)(reversal required because trial court excluded testimony of plaintiff's expert that defendant had created an unsafe condition and defense counsel, after successfully arguing for the exclusion of the proffered evidence, in closing argument, "whipsawed the plaintiff for not producing that very testimony"); George v. Mann, 622 So.2d 151, 152 (Fla. 3d DCA 1993)("Defense counsel repeatedly referred to Mrs. George's `lawsuit pain,' and argued that she had `set up' the entire lawsuit, implying that she was a liar and was perpetrating a fraud upon the court. Defense counsel also argued to the jury that Mrs. George had concealed evidence and violated discovery orders. This line of argument, even if not objected to, constitutes reversible error"); Emerson Elec. Co. v. Garcia, 623 So.2d 523 (Fla. 3d DCA 1993)(new trial ordered where plaintiff's counsel accused defense counsel of fraud, hiding evidence, and putting up roadblocks to discovery).
I find that given Plaintiff's counsel's specific knowledge of the reason for Dr. Piper's absence, his opposition to informing the jury as to that reason, and his vehement argument to the trial court that Dr. Piper's deposition testimony and addendum report were sufficient evidence of his expert opinion, any argument by Plaintiff's counsel implying that defense counsel was hiding evidence by failing to bring in Dr. Piper to testify was both egregious and prejudicial to Fisher. See Johnnides v. Amoco Oil Co., 778 So.2d 443 (Fla. 3d DCA 2001). Indeed, this Court has in the past characterized such an argument as "disingenuous" and "misleading" and has repeatedly disapproved of this type of approach to lawyering and litigation. See Hernandez, 695 So.2d at 486.
Additionally, because this matter is being returned to the trial court for a new trial on all issues, I believe it appropriate to address the final issue raised by Fisher. A new trial is also warranted based on the trial court granting a directed verdict against the defendant, Fisher, on the issue of negligence. Perez's testimony differed substantially from Fisher's and therefore the issue of negligence should have been submitted to the jury. At trial, Perez testified that when the accident occurred he was driving in the slow lane, in stop-and-go traffic. Perez's deposition testimony, which was also read at trial, contained a different version of the accident. In his deposition, Perez claimed that he was traveling at approximately 45 miles per hour; that prior to the impact he did not slow down or stop his vehicle; and that there were moving vehicles directly in front of him. Fisher, however, testified in her deposition that there was slight traffic on the road at the time of the accident and that Perez, although he did not slam on his brakes, came to a sudden complete stop in a moving lane. At trial, Fisher testified similarly although she also testified that she had seen Perez slowing down previous times, before the accident occurred.
In Florida, there is a presumption of negligence which attaches to the driver of a rear vehicle in a rear-end collision. Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 572-73 (Fla.2001); Eppler v. Tarmac America, Inc., 752 So.2d 592, 594 (Fla. 2000). "However, if the stop is not expected, i.e., `abrupt and arbitrary' in a place *657 not reasonably expected . . . then the presumption is rebutted, and the [plaintiff] is not entitled to a directed verdict." See Hunter v. Ward, 812 So.2d 601, 603 (Fla. 1st DCA 2002); accord, e.g., Wright v. Ring Power Corp., 834 So.2d 329, 331 (Fla. 5th DCA 2003).
In this case, Fisher's testimony that Perez came to a sudden and complete stop, in a moving and immediately open lane of traffic, created a question of fact as to whether the stop was at a time and place reasonably to be expected. If the stop was not expected and was in a place not reasonably expected then the presumption of negligence was rebutted. Accordingly, Perez was not entitled to a directed verdict on the issue of negligence. The issue of negligence, dependent upon the conflicting testimony of the parties, should instead have been submitted to the jury. See Nathanson v. Houss, 717 So.2d 114, 116 (Fla. 4th DCA 1998)("A directed verdict cannot stand where there is any competent evidence to support the non-movant's position."); cf. Cheng v. Sirichoke, 745 So.2d 1152 (Fla. 3d DCA 1999)(conflicting testimony as to traffic conditions on busy urban expressway at time of collision precluded summary judgment in favor of preceding driver).
NOTES
[1] Evidence regarding Dr. Piper's credentials was not perpetuated in deposition testimony.
[2] The following exchange occurred:

MR. KNIGHT: I'm sorry. I just thought of it now. I would like to be able to tell the jury why Dr. Piper is not going to be testifying here live.
THE COURT: Just I. mean 
MR. KNIGHT: Briefly.
THE COURT: No.
MR. KNIGHT: Judge, I'm being forced to use the Plaintiff's discovery depo already, and now you're going to  I told them we're going to hear him live. He's unavailable because he has a medical condition. They've got to hear that he has a medical condition. I told them they would hear from Dr. Piper. I will not be going to be able to prove that stuff from my opening because I'm being handcuffed. I would, at least, like to tell them why he's not going to be here.
THE COURT: No. Just like other witnesses appear by way of deposition. No. Anything further?
MR. KLEINBERG: I think the standard instruction "you are to consider this as though the person were present".
THE COURT: Sure.
MR. KNIGHT: Judge, that's completely prejudicial to the defense.
* * * *
THE COURT: No. As to why he's not here, that's not relevant.
[3] Defense counsel made the following proffer:

MR. KNIGHT: And then I would like to make the proffer. If Dr. Piper would have testified, number one, he would have been able to give his background education and experience, which is unable to be done here. He would be able to talk about his extensive experience with labral tears and these kind of injuries. He would have given definitions and talked extensively about chondromalacia, synovitis, about degeneration, about the cause of labral tears, about the causes of chondromalacia. He would have testified regarding permanency and the fact that even with this surgery there was no functional impairment but only an anatomical impairment. He would have testified that in an accident such as this, in the way that was described by the Plaintiff, there's no way that within reasonable degree of medical certainty that a  that this action described by the Plaintiff would have caused the labral tear. He would had [sic] then gone on to talk about the kind of things that do cause labral tears and chondromalacia. He would have discussed the various records that he relied on for his review, including Dr. Linan, Dr. Rosenzweig. He would had [sic] been available to rebut many of the things that Dr. Rosenstein said during this case, including some pretty far fetched opinions regarding chondromalacia, degeneration, and other things. He would have commented on future surgery. He would have commented on the need  the lack of a need for future surgery or future treatment. He would have commented on the fact that this patient has gotten back to normal which is the common course for most people that have labral tears that have had surgery. And overall, he would have just talked about his opinions regarding the causation and whether or not this injury was related. I think that pretty much covered it.