DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

—————————————————

AVESTA COMMUNITIES, LLC, and
PETER REX a/k/a PETER REYNOLDS,

Appellants,

v.

PAUL FRED,

Appellee.

No. 2D2025-0367

—————————————————

March 25, 2026

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Hillsborough County; Darren D. Farfante, Judge.

Michael P. Beltran of Beltran Litigation, Tampa, for Appellant Peter Rex
a/k/a Peter Reynolds.

Samuel J. Salario, Jr., and Jessica Slatten of Lawson Huck Gonzalez,
PLLC, Tampa, for Appellant Avesta Communities, LLC.

Daniel E. Nordby and Ricky L. Polston of Shutts & Bowen, LLP,
Tallahassee; Erik R. Matheney, Ella A. Shenhav, Michael P. Silver, Alyssa
L. Cory and Ashlyn R. Banks of Shutts & Bowen, LLP, Tampa, for
Appellee.

LUCAS, Chief Judge.

An ongoing dispute among a company's owners and a change in
lawyers among law firms gave rise to a motion to disqualify counsel. The
circuit court denied the motion following an evidentiary hearing.

However, because the court below prohibited a key witness's testimony at that hearing, we must reverse the court's order.

I.

The underlying controversies in this case are somewhat complicated, but since our resolution of this appeal turns on a fairly discrete issue, we can summarize the case before us as follows. Avesta Communities, LLC, is a Delaware limited liability company owned by four members: Peter Rex, Paul Fred, Nathaniel Fischer and, through a separate LLC, Robert Reynolds. Through various subsidiary entities, Avesta Communities does business in Florida, mostly revolving around real estate. Historically, Mr. Rex has served as the managing member of Avesta Communities and as the manager of Avesta Communities' affiliated companies.

For some time, there has been a brewing dispute between Mr. Fred, on the one hand, and the co-owners and management of Avesta Communities, on the other, as to how Avesta Communities has been run and how it has disbursed its revenues. That dispute turned into a lawsuit, which Mr. Fred filed on November 5, 2020, against Avesta Communities. On January 3, 2022, Mr. Fred filed a second amended complaint, which asserted both direct and derivative claims against Avesta Communities, its three other co-owners, as well as others.[1]

---

[1] In a derivative claim, a member or shareholder of a corporate entity purports to bring an action on behalf of that entity to recover damages for the corporate entity. *See generally* § 605.0802, Fla. Stat. (2022); *Iezzi Fam. Ltd. P'ship v. Edgewater Beach Owners Ass'n,* 254 So. 3d 584, 586 (Fla. 1st DCA 2018) ("A derivative suit has been defined as an action in which a stockholder seeks to enforce a right of action existing in the corporation; the injury sustained by the stockholder bringing such suit is basically the same as the injury sustained by other

Over the years, Shutts & Bowen, LLP (Shutts Firm) has represented certain subsidiaries of Avesta Communities in a variety of matters. Several attorneys at the Shutts Firm provided legal representation for these affiliates, including Matthew Meyer, Esq., a shareholder at the Shutts Firm since 2021.

Prior to 2021, Mr. Meyer was the managing partner of the Tampa office of Ansa Assuncao, LLP (Ansa Firm). In April 2019 Michael Beltran, Esq., joined Mr. Meyer at the Ansa Firm as a shareholder. Mr. Beltran had represented Avesta Communities, Avesta Communities' affiliates, and Mr. Rex since 2013. And according to a sworn declaration Mr. Beltran filed, he had been advising Avesta Communities and Mr. Rex on matters related to Mr. Fred's ongoing disputes with Avesta and its members since at least 2016.

Mr. Beltran would practice alongside Mr. Meyer at the Ansa Firm until Mr. Beltran's departure in 2020. In a declaration, Mr. Beltran averred that during that time, Avesta Communities engaged the Ansa Firm to advise it on a matter known as "MaxProp," which concerned the company's ongoing dispute with Mr. Fred (which, at that point, had not yet blossomed into litigation). According to Mr. Beltran's declaration, while he and Mr. Meyer worked together at the Ansa Firm, they met with Avesta Communities' executives and general counsel over lunch to discuss the company's legal issues. Mr. Beltran further averred that he prepared an extensive memorandum for Mr. Rex addressing potential

---

stockholders in the corporation." (emphasis omitted) (quoting *Leppert v. Lakebreeze Homeowners Ass'n,* 500 So. 2d 250, 252 (Fla. 1st DCA 1986))). Mr. Fred's operative complaint is now on its fifth iteration, but it arises from the same operative allegations and continues to assert both individual and derivative claims that seek various forms of relief against Avesta Communities and others.

controversies with Mr. Fred, including issues that are now the subject of Mr. Fred's litigation. Mr. Beltran declared that Mr. Meyer approved assigning a Philadelphia partner to assist Mr. Beltran in his representation and that Mr. Meyer was copied on Mr. Beltran's billing time entries, including those concerning the dispute with Mr. Fred. Those billing entries, according to Mr. Beltran's declaration, "provide[d] detailed narratives . . . [and] contained confidential and privileged case information." Finally, Mr. Beltran averred that when he left the Ansa Firm, Mr. Meyer handed him a jump drive that included the file for the Ansa Firm's representation of Avesta Communities.

Fast forward to 2024. After three years of litigation, on May 28, 2024, the Shutts Firm filed a notice of appearance on behalf of Mr. Fred in the underlying lawsuit. Avesta Communities and Mr. Rex promptly voiced their objection to the Shutts Firm regarding its representation, and when the firm declined to withdraw, they filed a motion for disqualification. The motion, as later amended, asserted several grounds for disqualification, including the alleged acquisition of confidential information the Shutts Firm acquired through Mr. Meyer, as well as the Shutts Firm's past and ongoing representation of Avesta Communities' affiliate companies. According to Avesta Communities and Mr. Rex, the Shutts Firm's representation of Mr. Fred violated Rules Regulating the Florida Bar 4-1.7 (conflict of interest with current clients), 4-1.9 (conflict of interest with former clients), and 4-1.10 (imputation of conflicts of interest).

The circuit court scheduled an evidentiary hearing on the disqualification motion for January 10, 2025. The court directed the

4

parties to exchange witness lists ahead of time. Mr. Fred included Mr. Beltran on his witness list; Avesta Communities and Mr. Rex did not.[2]

The evidentiary hearing before the circuit court lasted the better part of a day. Multiple witnesses were called, and much of their testimony concerned the structure of Avesta Communities and its affiliated companies, the extent of the Shutts Firm's representation and, perhaps most critically, what information Mr. Meyer had acquired about Avesta Communities and Mr. Fred's dispute when he was the managing shareholder of the Ansa Firm's Tampa office and worked alongside Mr. Beltran (again, Mr. Beltran averred that he had represented Avesta Communities concerning this very controversy).

Mr. Beltran was present in the courtroom for the hearing. However, when Avesta Communities and Mr. Rex attempted to call Mr. Beltran to testify, the Shutts Firm objected on the ground that he had not been included on Avesta Communities' witness list. Mr. Fred's counsel, Erik Matheney, Esq., argued that if Avesta Communities had listed Mr. Beltran as a witness, that "would have affected our game plan" and "[t]here could have been a witness or an affidavit or whatever that we would have utilized to address whatever he's going to testify to." Both Mr. Beltran and counsel for Avesta Communities stated that Mr. Beltran's testimony would remain within the scope of his previously filed declaration, and since Mr. Fred had already received that declaration and had, in fact, listed Mr. Beltran as one of his own witnesses, Mr. Fred would sustain no prejudice if the court heard Mr. Beltran's live testimony.

---

[2] Appellate counsel for Avesta Communities and Mr. Rex candidly conceded that this was an oversight, likely the result of amending their motion between the time of the original filing and the hearing.

The circuit court sustained Mr. Fred's objection. It made no finding of prejudice but instead, referencing Mr. Beltran's anticipated testimony, simply stated: "I don't need that. I mean, if he's telling me you've got a declaration, and you're going to admit it into evidence, so if he's not disclosed as a witness, I'll sustain Mr. Matheny's objection." The court did allow Mr. Beltran to proffer his testimony, but the judge absented himself from the courtroom when the proffer was made.

In his proffer, Mr. Beltran affirmed that he would not have testified outside the scope of his declaration but would "clarify and augment some of the facts and provide additional details." And, indeed, his proffer elaborated on several facts that were in dispute, including the nature of his conversations with Mr. Meyer when they worked together at the Ansa Firm, what that representation entailed, how involved Mr. Meyer had been with that representation, and potential rebuttal to another witness' testimony. Mr. Beltran testified:

> I explained the [Amended and Restated Limited Liability Company Agreement of Avesta Communities LLC (ACOA)] to Mr. Meyer. I explained the 20-year noncompete and waiver of fiduciary duties and then there were other things both in the AC[OA] and the MaxProp memo, tag-along, drag-along, major decisions, provisions, thing[s] of that nature. I explained that to Matt Meyer.

He further stated, "Matt Meyer knew about the case." And when he recounted talking to Mr. Meyer over the telephone about the potential for moving to disqualify the Shutts Firm, Mr. Beltran testified:

> When [Mr. Meyer] called me back on Monday, I told him what I was going to have to do. I described our interactions and he accepted that we had worked on the Avesta matter, that I had worked on the Avesta matter. . . .
>
> I said I regretted that I had to do this, that we were good friends and that I hope it didn't change that, and he said to me that if he gets dis—his firm gets disqualified because of

6

something that he did when we were together at Ansa, then that was just something he was going to live with or he wasn't going to be mad or they weren't going to be mad at him, he wasn't going to be mad at me.

The circuit court did not ever hear, much less consider, any of this proffered testimony.

Based on the evidence it did consider, the court denied Avesta Communities' motion to disqualify. In a detailed order, the court correctly observed that it had to undertake a factual inquiry as to whether Mr. Meyer had obtained actual knowledge of material confidential information.[3] Relying solely on Mr. Beltran's declaration and weighing that against Mr. Meyer's declaration (in which he averred he could not recall the details of any prior meeting with Avesta Communities or any "Avesta-related information"), the court concluded that Avesta Communities failed to establish a prima facie case for disqualification. Alternatively, the circuit court held that, even if Avesta Communities had shown a prima facie case, the Shutts Firm had sufficiently demonstrated that it should not be disqualified "based on the detail regarding its prior representations and the derivative nature of this action."

---

[3] Rule 4-1.10's comment on confidentiality states as follows:
A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. . . .
Application of subdivisions (b) and (c) depends on a situation's particular facts. In any inquiry, the burden of proof should rest on the firm whose disqualification is sought.
Subdivisions (b) and (c) operate to disqualify the firm *only when the lawyer involved has actual knowledge* of relevant information protected by rules 4-1.6 and 4-1.9(b) and (c).

(Emphasis added.)

This timely appeal was then filed.

## II.

We have jurisdiction to review orders on motions for disqualification of counsel under Florida Rule of Appellate Procedure 9.130(a)(3)(E). Our review of an order granting or denying a motion to disqualify counsel would be for an abuse of discretion. *See Pagidipati v. Vyas*, 353 So. 3d 1204, 1211 (Fla. 2d DCA 2022) (quoting *Kaplan v. Divosta Homes, L.P.*, 20 So. 3d 459, 461 (Fla. 2d DCA 2009)). We explained the balance of interests a trial court must consider when ruling on a motion to disqualify in *Pagidipati*, 353 So. 3d at 1211:

> Due to the gravity of the rights involved, including the party's right to counsel and the attorney's right to freely practice law, "disqualification of counsel 'is an extraordinary remedy and should only be resorted to sparingly.' " *Balaban v. Philip Morris USA Inc.*, 240 So. 3d 896, 899 (Fla. 4th DCA 2018) (quoting *Manning v. Cooper*, 981 So. 2d 668, 670 (Fla. 4th DCA 2008)). Nonetheless, "courts should not hesitate to disqualify an attorney where the circumstances justify such a severe remedy." *Id.*

The case at bar, however, also presents a preliminary issue of whether Mr. Beltran should have been allowed to provide live testimony at the disqualification hearing. We have not had an occasion to state what the standard of review should be when, as here, a court convenes an evidentiary hearing on a motion to disqualify counsel, requires a prior exchange of witness lists, and then disallows a witness' testimony because of a failure to include that witness on a list. In the context of a trial, our review of such a ruling would be for an abuse of discretion. *See generally Gaspar's Passage, LLC v. RaceTrac Petroleum, Inc.*, 243 So. 3d 492, 500 (Fla. 2d DCA 2018) ("We also review the trial court's decision to exclude late-disclosed witnesses or exhibits for an abuse of discretion.").

8

We will review this issue for an abuse of discretion, recognizing that the context of the evidentiary proceeding—whether a jury trial, nonjury trial, or an evidentiary hearing that does not adjudicate any claim or defense—may impact the outer boundaries of a judge's discretionary decision to exclude an unlisted fact witness.

## III.

There were multiple grounds argued for disqualification, but our resolution of this appeal requires us to address only one, the potential imputed disqualification of the Shutts Firm by virtue of Mr. Meyer and Mr. Beltran's prior work together at the Ansa Firm. Rule Regulating the Florida Bar 4-1.10(b) provides:

> **(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

In *Scott v. Higginbotham*, 834 So. 2d 221, 223 (Fla. 2d DCA 2002), we explained:

> [U]nder rule 4–1.10(b), in order to establish a prima facie case for disqualification, the moving party must show that the newly associated attorney acquired confidential information in the course of the attorney's prior representation. *Gaton [v. Health Coal., Inc.]*, 745 So. 2d [510,] 511 [(Fla. 3d DCA 1999)]; *Koulisis [v. Rivers]*, 730 So. 2d [289,] 292 [(Fla. 4th DCA 1999)]. After the moving party meets this burden, the burden shifts to the firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information. *Id.*

9

In order to establish its prima facie case for disqualification under Rule 4-1.10(b), Avesta Communities would have to show that Mr. Meyer, now a shareholder at the Shutts Firm which represents Mr. Fred, acquired confidential information from Mr. Beltran concerning the matter now in litigation against Avesta Communities. Mr. Beltran's testimony was self-evidently essential to Avesta Communities' motion to disqualify. Mr. Fred hasn't suggested otherwise. And the circuit court's order noted that Avesta Communities described this argument as its "strongest basis for disqualification."

Given what was at stake, we cannot discern a reasonable basis for the court's decision not to allow Mr. Beltran to testify at the disqualification hearing. Depending on whether his proffer or Mr. Meyer's declaration was believed, Mr. Meyer, the former managing shareholder at Mr. Beltran's prior firm, may have acquired actual knowledge of the very dispute that is now in litigation.

In that regard, we should explain the context of judicial discretion here. Trial judges are, of course, afforded considerable flexibility to manage their dockets and set parameters for their hearings. But the hearing below was not a civil jury trial, in which private citizens are called upon to sacrifice their time to resolve a private dispute, where clients and their counsel invest considerable preparation, and where the presiding judge must remain especially vigilant about the proceeding's timely and orderly progression. Nor was it a bench trial, which often requires a significant investment of docket time and party resources to reach a final adjudication. This was an evidentiary hearing on an issue that was ancillary to the merits of the case. The court had already set aside a day for the hearing, and there was no indication from the record

that if there wasn't enough time to accommodate Mr. Beltran's live testimony a continuance of the hearing couldn't have been convened.[4]

In *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), the supreme court provided guidance when considering a pretrial failure to disclose a witness at trial. The *Binger* court explained:

> It follows, of course, that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.

*Id.* at 1313–14 (footnotes omitted).

*Binger*'s construction of judicial discretion during a trial should apply perforce to this evidentiary hearing. As should the precaution we issued in *Gaspar's Passage* about excluding key witnesses:

---

[4] We are not suggesting that a trial court can't impose witness and exhibit disclosure requirements in advance of an evidentiary hearing on a motion to disqualify counsel, nor that it can't enforce violations of those requirements. We simply observe that enforcement of such orders should be tempered by what is at stake at the hearing and in light of the factors discussed in *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981).

11

" '[T]he right to call witnesses is one of the most important due process rights of a party[,] and accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done.' " [*AT & T Wireless Servs., Inc. v. Castro*, 896 So. 2d 828, 832 (Fla. 1st DCA 2005)] (first alteration in original) (quoting *State v. Gerry*, 855 So. 2d 157, 161 (Fla. 5th DCA 2003)); *see also State Farm Mut. Auto. Ins. Co. v. Bowling*, 81 So. 3d 538, 541 (Fla. 2d DCA 2012) ("A trial court should only exclude witnesses under the most compelling of circumstances. . . ." (quoting *Keller Indus. v. Volk*, 657 So. 2d 1200, 1203 (Fla. 4th DCA 1995))). This is especially true "when the witness sought to be excluded is a party's only witness or one of the party's most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support [its] theory of the case." *Bowling*, 81 So. 3d at 541 (quoting *Pascual v. Dozier*, 771 So. 2d 552, 554 (Fla. 3d DCA 2000)); *see also Keller Indus.*, 657 So. 2d at 1202–03.

243 So. 3d at 501 (second and fourth alteration in original); s*ee also Pascual v. Dozier*, 771 So. 2d 552, 554 (Fla. 3d DCA 2000) ("[A] trial court should exercise caution when the witness sought to be excluded is . . . one of the party's most important witnesses . . . .").

The court below made no finding that Mr. Beltran testifying at the disqualification hearing would have resulted in any kind of prejudice at all. *See Louisville Scrap Material Co. v. Petroleum Packers, Inc.*, 566 So. 2d 277, 278 (Fla. 2d DCA 1990) (concluding trial court abused discretion by prohibiting expert from testifying and observing "[t]his is not a case where a party was taken by surprise regarding witness testimony, at the time of trial, or was not aware of what would be the subject matter of the testimony prior to trial"); *Callari v. Winkeljohn*, 329 So. 3d 795, 797 (Fla. 3d DCA 2021) (stating that a court's failure to analyze the *Binger* factors when excluding a late-disclosed witness' testimony "will result in reversal" (quoting *Montero v. Corzo*, 320 So. 3d 976, 980 (Fla. 3d DCA 2021))); *Deutsche Bank Nat'l Tr. Co. ex rel. LSF MRA Pass-Through Tr. v.*

12

*Perez*, 180 So. 3d 1186, 1189 (Fla. 3d DCA 2015) ("Here, the trial court incorrectly refused to even consider whether Perez would be prejudiced by allowing the bank's witness to testify at trial.").

Moreover, from this record we cannot see what prejudice there could have been had the court simply allowed him to testify. All that Mr. Fred could say on this point was that Avesta Communities failed to include Mr. Beltran on its witness list, and that if he had been disclosed as a potential witness, Mr. Fred "may have secured additional witnesses or affidavits . . . in preparation for the evidentiary hearing."[5] But that level of generality doesn't tell us anything of substance and fails to evince the requisite prejudice, the "surprise in fact," that *Binger* requires under these circumstances.

Finally, the remaining *Binger* factors further demonstrate the abuse of discretion here: the Shutts Firm was well aware of Mr. Beltran and the scope of his testimony (they had, after all, included him on their own witness list); there was no evidence that the failure to include Mr. Beltran on Avesta Communities' list was done intentionally or in bad faith; and since this was an evidentiary hearing on a motion to disqualify, there

---

[5] We can readily dispense of Mr. Fred's argument that Avesta Communities sustained no harm from the court's decision because it admitted and considered Mr. Beltran's written declaration. *See Fisher v. Perez*, 947 So. 2d 648, 652 (Fla. 3d DCA 2007) ("A strong preference exists in law for live testimony." (first citing *Silverman v. Millner,* 514 So. 2d 77, 79 (Fla. 3d DCA 1987); then citing *Jean v. Sanitation Inc.,* 596 So. 2d 1245, 1247 (Fla. 4th DCA 1992); and then citing *LoBue v. Travelers Ins.,* 388 So. 2d 1349, 1351 (Fla. 4th DCA 1980) (disapproved of on other grounds by *Barth v. Khubani,* 748 So. 2d 260, 262 n.7 (Fla. 1999)))). And as we recounted earlier, Mr. Beltran's proffer substantively expounded on his prior written declaration and, potentially, provided impeachment evidence against another witness' testimony.

was no trial being disrupted. In sum, Mr. Beltran's testimony was critical in this hearing, and he should have been allowed to testify.

## IV.

Accordingly, we reverse the order denying the motion to disqualify and remand this matter to the circuit court to convene an evidentiary hearing in accordance with this opinion. We make no comment on the merits of the other arguments raised in this appeal or the evidence that was presented below. The court is free to reconsider its ruling in light of such further evidence and arguments as the parties may present.

Reversed and remanded with instructions.

BLACK and SLEET, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.